(No. 15056.—Judgment affirmed.)

THE ALADDIN COAL AND MINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHARLES STOUT, Defendant in Error.)

*Opinion filed April 18, 1923.*

1. WORKMEN'S COMPENSATION—*burden is on applicant to prove accidental injury and extent thereof.* The burden is on the applicant for compensation to prove he was accidentally injured and the extent of the injury.

2. SAME—*what may be considered by Industrial Commission in determining controverted question of fact.* Where it is a controverted question whether the applicant's loss of vision was due to the injury or to a pre-existing disease the Industrial Commission must consider all the testimony, and it is proper to consider the character of the testimony, who the witnesses are, their opportunities for knowing the truth of the matters testified to, and all other matters which tend to affect the weight and credit to be given their testimony.

3. SAME—*when finding is supported by the evidence notwithstanding expert testimony.* A finding that the applicant's loss of sight of an eye was due to an accidental injury and not to a pre-existing disease will be regarded by the Supreme Court on review as supported by sufficient evidence notwithstanding the testimony of physicians that the loss of sight was the result of disease and that there was no evidence of injury to the eye, where the same expert witnesses testify that it would be possible for an injury to aggravate the disease and where the applicant's evidence proves that there was an accidental injury to the eye.

WRIT OF ERROR to the Circuit Court of Perry county; the Hon. J. F. GILLHAM, Judge, presiding.

GEORGE W. DOWELL, for plaintiff in error.

A. W. KERR, and GEORGE R. STONE, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This court allowed a writ of error to review a judgment of the circuit court of Perry county confirming an award made in favor of defendant in error under the Workmen's Compensation act.

Charles Stout was employed in the mine of plaintiff in error near Cutler, Perry county, Illinois, and claims to have been accidentally injured while engaged in his employment on June 23, 1920. He made application for adjustment of claim in 1920, and on a hearing before an arbitrator November 23, 1920, he was awarded $15 per week for a period of eight weeks and three days for temporary total incapacity and $15 per week for 100 weeks for complete loss of sight of his right eye. A hearing on review was had before the Industrial Commission on April 1, 1921. The award of the arbitrator was found to be correct and was adopted as the decision of the Industrial Commission. The record was removed by the plaintiff in error to the circuit court of Perry county by writ of *certiorari,* and that court on May 10, 1922, confirmed the award of the Industrial Commission.

Several errors are assigned, but the only one argued and insisted upon is that there is no competent evidence to sustain the award. Both parties were working under and subject to the provisions of the Workmen's Compensation act, and no question is raised as to notice of the alleged injury. No compensation was ever paid to Stout. He testified before the arbitrator on the hearing of the application for compensation that he was thirty-six years old and had three children under sixteen years of age; that he had worked for plaintiff in error at its mine for a year or two; that he earned seven or eight dollars a day, and that he

was injured in the mine on June 23, 1920; that while squaring down a place in his room in the mine with a pick to. set up a drilling machine a piece of coal flew out and hit him in the right eye; that the accident happened about eleven o'clock in the morning; that no one was with him when it occurred and he worked on till 3:30 in the afternoon of that day, which was the usual quitting time; that he did not know how large the piece of coal was that hit him in the eye; that he had Dr. Smith examine the eye the day he was injured, and that though witness thought the piece of coal was still in his eye, Dr. Smith told him it was not; that he continued at work the next day and the second day following; that he did not report his injury till June 26, at which time he told the boss of his injury and how it happened; that he was sent by plaintiff in error to Dr. Mead, at Pinckneyville, for treatment of his eye and the doctor treated him about two or three weeks. Witness further testified he did not work from June 26 until August 24, 1920, at which time he went back to the same work in the mine; that after the injury he loaded just as much coal as before but that he could not see out of his right eye since the accident; that the loss of sight affected his ability in setting up props, judging shots and setting up a machine, and that he could not clean coal as well after as before the injury. He also testified his left eye was all right. On cross-examination he testified he had some five or six years previous taken treatment for his left eye from Dr. Wolfer, of St. Louis.

At the hearing on review before the Industrial Commission plaintiff in error offered the testimony of Dr. Joseph M. Keller and Dr. M. R. Damron, both of whom had, as we understand the record, examined claimant at the instance of plaintiff in error. Dr. Keller testified that he is a resident of St. Louis, Missouri, a physician and surgeon, and an instructor in the St. Louis University Medical School on diseases of the eye; that he examined the eyes of Stout on

March 28, 1921, and described the appearance of the eyeballs and lids in technical language, and said he had trachoma of many years' standing, which in every-day English means sore eyes and granulated lids; that the condition of the eyes when he examined them in March, 1921, is known as trachomatous pannus, which frequently accompanies trachoma, and by spreading over the pupils of the eye causes loss of sight; that claimant told him he had once previous to the injury to the right eye, and once afterwards, sustained injuries to the left eye. He further testified that the condition of the eyes was of several years' standing; that if claimant had received an injury there would be some evidence of it and that he saw no evidence of an injury; that a slight injury might not show, but if it was severe there would be evidence of it.

Dr. Damron testified he specialized in eye treatment; that he examined claimant's eyes in January, 1921, and found evidences of an old trachomic ulcer; that both eyes were inflamed, with practically no vision in the right eye; that the condition evidenced trachoma of long standing; that an injury to the eye would have aggravated the ulcer, but he found no evidence of an injury; that if the eye had received an injury in June, 1920, of such seriousness as to affect it, he would have observed some evidence of it.

Dr. Mead, to whom plaintiff in error sent claimant when notified of the injury and who treated him two or three weeks, was not called to testify.

It has been frequently held that the burden is on the applicant to prove he was accidentally injured and the extent of the injury. The cases are so familiar as not to require citation.

There can be no question that the testimony of claimant, considered alone, made a case which justified the award, but plaintiff in error contends that when the testimony of Drs. Keller and Damron is considered the whole evidence shows that the condition of claimant's right eye

was not due to an accidental injury but was due to a preexisting disease not connected with any accident arising out of his employment. Claimant's testimony that he was hit in the right eye June 23, 1920, by a piece of coal is not directly contradicted. The only way in which there was any contradiction of claimant's testimony that he was accidentally injured was by the testimony of Drs. Keller and Damron that there were no evidences of such an injury when they examined the eye in January and March, 1921. As to the fact of there having been accidental injury to the eye June 23, 1920, it cannot be said the testimony of the expert witnesses must be held to conclusively overcome claimant's testimony and establish that there was no accidental injury. The reason why this is so is so obvious as not to require discussion. The weight of the proof does, we think, show claimant had diseased eyes before the injury, but it was a controverted question whether the loss of vision of the right eye was due to an injury or to preexisting disease. In determining that question it was the province and duty of the Industrial Commission to consider all the testimony and give it such weight as under all the circumstances it was entitled to. The commission could not arbitrarily disregard any of the testimony, but it was its duty to reasonably and fairly consider the evidence of both parties in determining the issues. It was proper to consider the character of the testimony, who the witnesses were, their opportunities for knowing the truth of the matters testified to by them, and all other matters which tended to affect the weight and credit that should be given their testimony. We do not think this court would be warranted in reversing the judgment on the ground that the award was clearly contrary to the evidence. Notwithstanding the testimony of plaintiff in error's expert witnesses that there were no evidences of an accidental injury, it cannot reasonably be said the commission was bound to find that there was no such injury. Both of the experts testified that an

injury would aggravate the condition described. Claimant testified his left eye had been accidentally injured twice, but the injuries did not destroy the sight of that eye. The loss of vision of the right eye, for which the award was made, was claimed to have been caused by an injury June 23, 1920. In view of the record we cannot say the commission should have accepted and acted on the testimony of the witnesses of plaintiff in error as true and that of claimant as untrue.

The judgment is affirmed.      *Judgment affirmed.*

---

(No. 15151.—Reversed and remanded.)
OSCAR W. SCHNEIDER, Defendant in Error, *vs.* OTTO NEU-
BERT *et al.* Plaintiffs in Error.

*Opinion filed April 18, 1923.*

1. CONTRACTS—*when extrinsic evidence may be received to determine the meaning of contract.* Where the court, on preliminary examination, has determined that a contract is ambiguous or incomplete, extrinsic evidence, including evidence of the acts and conduct of the parties tending to show their interpretation of the contract, is admissible to ascertain its true intent and meaning.