THE SUPERIOR COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JAMES KELLETT, Defendant in Error.)

*Opinion filed June 16, 1926.*

1. WORKMEN'S COMPENSATION—*loss of a second member may give rise to compensation for total disability.* Where an employee has before his employment lost one of the members mentioned in subdivision 18 of paragraph (*e*) of section 8 of the Compensation act, and afterward, as a result of an injury arising out of and in the course of his employment, loses another member, he is entitled to compensation not merely for the loss of the second member but for the total disability caused by such loss combined with his previous loss, but where the loss of the second member does not, in fact, cause total incapacity to work, the employee is entitled to compensation for the loss of that member, only.

2. SAME—*when award may be had for total disability resulting from injury to eye.* Where an employee, who worked as a loader in a mine and was totally blind in one eye, suffers an injury to the other eye in the course of his employment, a finding of total and permanent disability is supported by the evidence where it is shown that the injury has rendered the employee unable to find employment in any gainful occupation or to perform successfully the duties of such employment if he could secure it; and an award for total permanent disability under paragraph (*f*) of section 8 of the Compensation act, prior to its amendment in 1925, is justified although the injury did not cause total loss of the use of the eye.

WRIT OF ERROR to the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

VAUGHN & NEVINS, for plaintiff in error.

A. W. KERR, and JOSEPH A. LONDRIGAN, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

On May 1, 1924, James Kellett, who had been blind in his right eye for eight years, sustained an accidental injury to his left eye in the course of and arising out of his em-

ployment by the Superior Coal Company, for which, on his application to the Industrial Commission, an arbitrator made an award in his favor against his employer of $15 a week for 12 weeks of total incapacity to work and $15 a week for 75 weeks, as provided in paragraph (e) of section 8 of the Workmen's Compensation act, for the reason that the injury caused permanent and complete loss of seventy-five per cent of the use of his left eye. Both the employer and the employee filed petitions for review, and on February 13, 1925, the Industrial Commission, without any additional evidence, set aside the decision of the arbitrator, found that "at the time of the said accidental injury petitioner was totally blind in his right eye and the said accident rendered him industrially blind in his left eye, and that he became, as a result of said accident, wholly and permanently incapable of work," and made an award of $15 a week for 266⅔ weeks and thereafter a pension for life of $26.66 a month. Upon a writ of *certiorari* the circuit court of Macoupin county confirmed this award, and a writ of error was allowed upon the petition of the Superior Coal Company to review the record.

The only question for our consideration is the extent of Kellett's disability. Paragraph (f) of section 8 of the Workmen's Compensation act before its amendment in 1925 provided that the amount of compensation to be paid to an employee for an injury not resulting in death should be, "in case of complete disability, which renders the employee wholly and permanently incapable of work, compensation equal to fifty percentum of his earnings but not less than $7.50 nor more than $14 per week, commencing on the day after the injury, and continuing until the amount paid equals the amount which would have been payable as a death benefit under paragraph (a), section 7, if the employee had died as a result of the injury at the time thereof, leaving heirs surviving as provided in said paragraph (a), section 7, and thereafter a pension during life annually

equal to eight per cent of the amount which would have been payable as a death benefit under paragraph (*a*), section 7, if the employee had died as a result of the injury at the time thereof, leaving heirs surviving, as provided in said paragraph (*a*), section 7:  *  *  *  *Provided, further*, that disability as enumerated in subdivision 18, paragraph (*e*) of this section shall be considered complete disability." Subdivision 18 of paragraph (*e*) also provided: "The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof, or the permanent and complete loss of use thereof, shall constitute total and permanent disability, to be compensated according to the compensation fixed by paragraph (*f*) of this section: *Provided*, that these specific cases of total and permanent disability shall not be construed as excluding other cases."

The award of the arbitrator was made under subdivision 17 of paragraph (*e*) of section 8 for the permanent loss of seventy-five per cent of the sight of the left eye. The award of the commission was made, on the same evidence, under paragraph (*f*) for permanent total disability. The declaration of subdivision 18 of paragraph (*e*) that certain conditions should constitute total and permanent disability provided expressly that the specific cases mentioned should not be construed as excluding other cases. The evidence does not show the loss of both eyes or the total loss of the use of both, and the case does not, therefore, come under the provisions of subdivision 18. But if, because of the injury, Kellett is, in fact, rendered wholly and permanently incapable of work he is entitled to compensation for such total incapacity. We have held under these provisions of the statute that where the employee had before his employment lost one of the members mentioned in subdivision 18 of paragraph (*e*), and afterward, as a result of an injury arising out of and in the course of his employment, lost another member, he was entitled to compensation

not merely for the loss of the member suffered during his employment but for the total disability caused by such loss combined with the previous loss. (*Wabash Railway Co.* v. *Industrial Com.* 286 Ill. 194; *Mark Manf. Co.* v. *Industrial Com.* id. 620; *Heaps* v. *Industrial Com.* 303 id. 443.) We have also held that where, under the same conditions, the loss of the second member does not, in fact, cause total incapacity to work, the employee is entitled to compensation for the loss of the member, only, and not for the total disability which does not exist. (*Chicago Journal Co.* v. *Industrial Com.* 305 Ill. 46.) The question for determination, therefore, is a question of fact as to the total disability of Kellett, and the evidence consists of his own testimony and that of three physicians and surgeons specializing in diseases of the eye.

It appears from the testimony of the physicians that there is a large scar in the pupillary area of the cornea covering almost the entire pupil, extending upward and outward; that in the left eye there is a vision of 20/50, as stated by two of the physicians, or 20/100 as stated by the third. As usually expressed, these statements mean that the person examined sees at twenty feet what he ought to be able to see at fifty feet and one hundred feet, respectively. The lower nasal side is the only place where the light comes through. That is the clearest space, and it is not perfectly clear. The light can penetrate from that side, so that he has a vision from the side view. He does not see with the outer temporal side. The cause of the opacity in the eye is some disturbance in the pupillary area, leaving scars on the cornea. They interfere with the free access of rays of light to the inner surface of the eye. It is the scar over the cornea which cuts down the vision and makes it blur. If the scar tissue should diminish or become thinner the vision would improve, but none of the physicians expressed a judgment that there was any probability of improvement in the sight.

Kellett himself testified: "I have got to be up pretty close to my most intimate friends before I can recognize them. I have learned, however, at home mostly, to recognize my friends by their form and walk more than by sight. My vision is not as good when the sun is real bright as on a cloudy day, like this morning. When I look into something bright can't see very well and stumble around like a horse trying to get over the fence. When I look at things they look muddy, like looking through a window with soap on, or dirty glass, or through a cloud. My scope of vision seems to be cut down. If I want to see anything I have got to turn and look at it,—haven't any side vision to speak of. I have to concentrate my sight on objects for a period of time before I can distinguish just what they are. The eye seems to be slow. Since I have been discharged from the doctor the eye seems to be about the same,—can't tell much difference. Some days the eye is better than on other days. * * * I can see to get about fairly well where I am acquainted. I would say that I could observe a familiar acquaintance, under ordinary light and conditions, at a distance of about where Dr. Morris is. It looks like five or six feet from the table. I believe the interference with my sight prevents me from doing such work as I was doing at the time of the injury. I was a loader. * * * The blasting, preparing of the shots, loading of the coal and taking care of the working place is the loader's duty. That requires some use of a pick. In loading the coal sometimes have to break it up. The loader has to place the props. That part of it is the character of work that my eye as it is now would interfere in doing. I think it would interfere with mashing up and loading the coal. I don't think the coal company would hire me to-day, as tight as the market is, due to the fact that my eye is not sufficient to take the impurities out of the coal."

There is no contradiction in the testimony. It tends to show that Kellett is unable to work as a miner, and no

other calling is suggested in which he could earn money. The argument of the plaintiff in error is that there is not a total loss of the use of the left eye and therefore he is not totally disabled. The condition of his sight, as he describes it, indicates that it would be exceedingly difficult, if not impossible, for him to find employment in any gainful occupation or to perform successfully the duties of such an employment if he could secure it. The finding of the commission that he is wholly and permanently incapable of work is supported by the evidence, and the judgment of the circuit court is affirmed.          *Judgment affirmed.*