(No. 18038.—Reversed and remanded.)
THE CONSOLIDATED COAL COMPANY OF ST. LOUIS, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (TOM GOYAK, Defendant in Error.)

*Opinion filed April 20, 1927.*

1. WORKMEN'S COMPENSATION—*when a finding of permanent total disability is not justified.* A finding of permanent total disability is not justified by the evidence where the testimony of the employee himself and of two physicians indicates that he is able to do some light work which he has never tried or had opportunity to do, and where the evidence of his actual condition does not exclude the possibility of his being able to do light work, although it shows that he will never be able to do his accustomed work.

2. SAME—*when, only, is award for permanent total disability justified—burden of proof.* An award for permanent total disability is justified only where the employee is rendered wholly and permanently incapable of work at a gainful occupation as a result of his injury, and the burden is upon the applicant to establish that fact by proof sufficient to support the conclusion that the accidental injury caused such complete and permanent disability.

WRIT OF ERROR to the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

EDGAR P. HOLLY, (JOSIAH WHITNEL, and H. L. BROWNING, of counsel,) for plaintiff in error.

W. J. MACDONALD, (A. W. KERR, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Tom Goyak, a coal miner employed by the Consolidated Coal Company of St. Louis in its coal mine at Mt. Olive, was caught between coal cars and the face of the rib on October 17, 1922, and severely injured. He filed his claim for compensation with the Industrial Commission, and on June 12, 1925, an arbitrator made him an award of $14 a week for 267-6/7 weeks and thereafter a pension of $25 a

month for life, finding that $1834 had already been paid on account of the injury. On review the commission sustained the award. A writ of *certiorari* from the circuit court of Macoupin county was quashed and the award confirmed. On the petition of the coal company a writ of error was allowed to review this judgment.

The sole question presented is whether the evidence shows a permanent total disability, or a permanent partial disability only.

Goyak was nineteen years old at the time of his injury. He testified that he was trip-riding on a motor, his duties being to get off the motor, throw the switches and block the cars. There were seventeen cars in the train. It was down-hill and he had to get on and off the motor fast. He got caught between the car and the rib and was rolled the length of seven cars—between the cars and the rib. He was hurt in the arms, chest and pelvis, was unconscious, and did not remember how he got out from under the car. He was in the hospital eighteen weeks, then around on crutches, then on one crutch and then with a cane, for a total period of more than a year. About May 16, 1924, he tried to do trip-riding in the mine but after making two trips had to give it up. He then tried trapping, which was easier work, but at the place where he tried it the surface was rough and walking difficult, he had to open and close doors and walk back and forth, and he was unable to do this. He testified that the reason he could not ride trips was that he had to get on and off of the motor and do the same things as before he was hurt. He could not do that because it bothered him too much in the hips, for he had to get off the motor each time and make quick steps to throw the switches and then get back, and he could not do the job. The trouble was in the back, the right groin and lumbar region and the arms and kept him from doing much work. The left arm was weak in the elbow and shoulder, the elbow joint stiff, and when used it

felt sore. The shoulder also got sore and there was a pain in the back always. It does not bother in the crotch or groin unless he spreads his legs out or moves a certain way. Sometimes it catches in there and he cannot move, and sometimes something pops in there, and after that pops he can straighten out and walk. After it pops he gets along all right. It all depends on the position he gets in. If he gets in a certain position it does that. This happens many times. He may sit down to-day and if he gets in a certain position he has to wait until it pops, and after it pops he gets up. He is so used to it now that he does not keep track of how many times it happens. It seems to be right in between the legs. He testified that he tried trapping two days and they took him off. It tired him out in his legs and back. He got four dollars a day trapping and he has done nothing since. There is no improvement in his condition. The pain is always the same. His pain and condition have always been the same since he got out of the hospital. The pain is the reason he had to lay off. He had tried no other work, but thought that he could do something in the shop as an electrician helper if he could sit in the shop, and if something went wrong with the motor or the electricity unscrew the bolts, or something like that. It is repair work and would not require him to walk if in the shop. He could take time if he played out, just so he got the job done that day.

The evidence for the coal company consisted of the testimony of Drs. Wolf, Allen and Dailey. Dr. Wolf rendered first aid. He found incised wounds of both arms, bruising of the back, right abdomen and chest and complaint of severe internal pain. Dressings were applied over a good portion of his body where the skin had been removed and a hypodermic was given to relieve his pain. He was suffering from the shock, and an hour later he was in more shock and was taken from his home to the hospital at Litchfield and put under the care of Dr. Allen. An X-ray

examination was made the following day. It disclosed two fractures of the pelvis on the right side, a fractured pubic bone and a fracture of the ramus of the pelvic bone. The injury was serious. The fractures were complete.

Dr. Allen testified that in his opinion Goyak was able to do some light work eighteen months after his injury; that he could not have done work that required much stooping; that he should start with work at which he could stand up or sit down and use his hands; that he has never at any time recommended him as able to do any particular work in the mine; that the fracture and injury in the pelvic region account fully for the pain he complains of in the back and groin on the right side; that that condition and the stiffness in the back and motion of the legs are permanent; that there is actual limitation in back and legs; that the sensation of cracking and displacement which he complains of is not from a broken bone but probably from an injured muscle or tendon, and may be permanent.

Dr. Dailey testified that he had seen and examined Goyak frequently since he left the hospital. He thinks he will have a permanent stiffness in his back. In stooping there will be some limitation there, and there will be some trouble in his gait, walking. The pain he complains of through the region where he was injured is the result of the injury, and the weakness and inability to walk fast or to get on and off the motor is a result of the disability he has, and the cracking he complains of is a result of the injury. These things, in Dr. Dailey's opinion, are permanent. The kind of work he is able to do is limited. He would be able to do work where he is not required to do much stooping or too much walking, and can do a certain amount of lifting but not as much as normal.

No particular class of work was suggested which Goyak could do except his own suggestion, and that kind of work he has not had a chance to try. There are, perhaps, employments in which he might find use for such ability as

remains to him. The coal company has offered him nothing which he can do, though he thought he could perform the duties of an electrician's helper or do repair work. He undertook the work of trip-riding and of trapping but could not do either. Trapping is considered an easy job in the work of mining. His condition is permanent. The only evidence that it does not amount to total industrial disability is found in Goyak's opinion and those of Dr. Dailey and Dr. Allen, all of whom thought that he could perform some light work. It is doubtful whether these opinions are justified by the evidence, yet the testimony of Goyak himself and of two physicians that he is able to do some light work is inconsistent with his permanent total disability and cannot be disregarded, (*Aladdin Coal Co.* v. *Industrial Com.* 308 Ill. 35,) in view of the fact that the evidence showing his actual condition did not exclude the possibility. In the case of *Superior Coal Co.* v. *Industrial Com.* 321 Ill. 533, cited by the defendant in error, the evidence excluded the possibility of the injured employee engaging in the work which he had been accustomed to do, and no employment which he could do was suggested; and in the case of *Perry County Coal Corp.* v. *Industrial Com.* 316 Ill. 27, also cited, the physician who testified for the employer thought the employee was permanently incapable of work. An award for permanent total disability is justified only where the employee has been rendered wholly and permanently incapable of work at a gainful occupation as a result of his injury. The burden is upon the applicant to establish that fact, and the proof must be sufficient to support the conclusion that the accidental injury caused such complete and permanent disability. (*Consolidated Coal Co.* v. *Industrial Com.* 322 Ill. 510; *Consolidated Coal Co.* v. *Industrial Com.* 320 id. 281.) There is no substantial disagreement in the evidence, and in the opinion of all the witnesses the defendant in error is capable of doing light work. On another hearing it may appear that he is, in fact,

totally and permanently disabled, or the extent of his permanent disability may be ascertained.

The judgment is reversed and the cause remanded, with directions to set aside the award and remand the cause to the Industrial Commission for further proceedings, including the hearing of additional evidence, should any be offered.

*Reversed and remanded, with directions.*