(No. 17932.—

THE PERRY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOSEPH ROBERTS, Defendant in Error.)

*Opinion filed October 25, 1928—Rehearing denied Dec. 7, 1928.*

M. C. Young, (Burton & Hamilton, of counsel,) for plaintiff in error.

W. J. MacDonald, (A. W. Kerr, of counsel,) for defendant in error.

Mr. Justice Duncan delivered the opinion of the court:

On a hearing had before an arbitrator on February 4, 1925, an award was made for temporary total incapacity to Joseph Roberts, defendant in error, on account of accidental injuries received by him on October 18, 1924, while employed as a miner in the coal mine of plaintiff in error, the Perry Coal Company. On review the Industrial Commission on June 16, 1925, found that the petitioner was rendered wholly and permanently incapable of work by reason of his injuries, and it determined and ordered that plaintiff in error should pay to him as compensation $8.55 per week for a period of 416 weeks and thereafter a pension of $23.73 per month during his life. On *certiorari* proceedings the circuit court of St. Clair county approved and confirmed the award of the commission. A writ of error has been awarded by this court for a review of the record.

In this court two contentions are made by plaintiff in error: (1) That the record does not establish that the condition of which complaint is made by defendant in error is due to the injury; and (2) that there is not sufficient evidence to establish the charge that he is totally and permanently disabled.

The stipulations before the arbitrator and the commission are, that on October 18, 1924, the date of the injury, defendant in error and plaintiff in error were working under the provisions of the Workmen's Compensation act; that the relation of employee and employer existed between them; that notice of the alleged injury was given to the employer and demand for compensation was made within the time required by the statute; that the annual earnings of the employee during the year preceding the alleged injury were $890; that his average weekly wage was $17.10; that he had no children under sixteen years of age; that nothing had been paid to him on account of his alleged injury, but that first aid, medical, surgical and hospital services had been furnished by his employer.

The only evidence offered by defendant in error was his own testimony, which is in substance the following: He was seventy-six years old when injured and had been working for the Perry Coal Company, shoveling and loading coal, for four years, and just before he received his injury he was engaged in loading coal in boxes (mine cars) and had pushed a car to the face of the mine wall. He saw a chalk-mark on the face of the wall and undertook to test the safety of the wall with his pick, but before he touched it a rock about eighteen inches long and eighteen inches thick fell on him before he could get away and knocked him down, his head striking the box-car and his body falling on a tie. He did not fall on the tie as a direct result of the rock striking him, but at the same time the rock was falling he attempted to jump back and went backwards about three feet before he struck the tie. His back was twisted and injured. His main injury is at the lower part of his spine. He never had any trouble or injury before to the lower part of his spine and back. He was hurt about eighteen months before this injury, but he recovered from that injury to the extent that he could load his seven boxes and do his work all right for some time before his present

injury but he cannot do that now. He reported his present injury to the company and got a written order from its clerk to go to Dr. Duey for treatment. Dr. Duey treated him by the use of an electric battery and has so treated him since his injury. He still goes to the doctor twice a week for treatment. He has done no work since his injury. His former injury occurred in July, 1923, and he was "off of his job" for about fourteen months on account of that injury. He worked after that injury and received three or four days' pay at one time and at another time twelve days, and he was able to load seven boxes of coal at that time and before his present injury. He has not tried to work, and has not been able to work, since the second injury. He is getting some better of his injury,—that is, he is having less pain,—but he cannot work because he cannot bend himself. When he attempts to bend forward he experiences a soreness around the pelvis—"right in the joint above the seat." He is not able to get down on his knees and pick up coal, and if he should get down he couldn't get up. He has also been examined by Dr. L. G. Harney, of East St. Louis, both for his previous injury and for his second injury.

For plaintiff in error, Dr. Harney, a specialist in traumatic surgery and diagnosis, testified that he had examined defendant in error on three different occasions—on October 18, 1923, on November 3, 1924, and on December 26, 1924. His examination in November, 1924, showed no change in the condition of the vertebral column from that in October, 1923. His examinations showed defendant in error to have a hypertrophic osteoarthritis, with fixation of all his lumbar vertebræ, and both sacroiliac joints are obliterated by a bony union. He has a definite bone destruction with a fixation of the left hip joint and a destructive bone process, both with the joint itself and the acetabular cavity of the head of the femur. This condition is very old—years old. He has hypertrophic osteoarthritis of all

the lumbar vertebraæ of his back, which is an exostosis or calcium deposit along the sides of the vertebræ, due to reaction of infection. It is a progressive disease until such time as the infection is cleared up or the individual has resistance to his infection or until the back or joints become fixed. Roberts' age will lower his resistance to an infection and his condition will make him more susceptible to strain and injury, which would be likely to cause pain and retard recovery from the painful condition. The pain of which Roberts complained was not in the lumbar spine but in the left sacroiliac joint. In witness' opinion the pain in the lower part of Roberts' back is due to his arthritis, "plus effort on that side, which is keeping the pain going."

The testimony of Dr. Duey, for plaintiff in error, is substantially as follows: Roberts came to him on October 18, 1924, with an order from his employer for treatment. He complained of an injury to his left sacroiliac joint and hip. No objective symptoms were found. He gave Roberts electric treatments and some internal medicine for a rheumatic condition. He is still treating him. Roberts is unable to work and will never be well. Witness would not say that his condition is permanent, but stated that he is unable to work and could not say when he will be. Witness treated Roberts for a similar condition, in the same region, about fifteen months before. Roberts' general condition is very poor. He has ankylosis of the left hip and an atrophy of the muscles of the upper part of the left leg, which is an old condition existing before his first injury. Very little improvement can be expected in a man of his age.

The first contention of plaintiff in error cannot be sustained. Defendant in error's testimony that on October 18, 1924, he twisted and injured his back by falling on the tie while attempting to get out of the way of a falling rock is uncontradicted. His statement is supported by the fact that he was able to do hard physical labor before that time and that since then he has been unable to do any work. That

he is unable to work is established by plaintiff in error's witness Dr. Duey as well as by the testimony of Roberts. The testimony of Roberts as to his injury and as to his inability to work since October 18, 1924, is not overcome by the testimony of the witnesses of plaintiff in error that their examinations disclosed no physical evidence of an injury. Dr. Harney stated that Roberts' bodily condition was such as to make him susceptible to a strain or injury, which would be likely to cause pain and retard recovery from the painful condition. The record does establish that Roberts had a diseased condition of his vertebral column and left hip before the injury, but whether his disability is due wholly to that condition or to his second injury is a controverted question, and in determining that question it was the province and duty of the Industrial Commission to consider all the testimony and give it such weight as should be accorded to it. This court would not be justified in setting aside the finding of the commission on this question. (*Aladdin Coal Co.* v. *Industrial Com.* 308 Ill. 35.) The diseased physical condition of the employee is immaterial where the accidental injury is the proximate cause of his physical disability. *O'Gara Coal Co.* v. *Industrial Com.* 320 Ill. 191; *Centralia Coal Co.* v. *Industrial Com.* 301 id. 418; *Big Muddy Coal Co.* v. *Industrial Board,* 279 id. 235.

The injury occurred in October, 1924. The hearing before the arbitrator was on February 4, 1925, and before the commission on June 16, 1925. There is no evidence of any favorable change in Roberts' condition between February 4 and June 16 indicating that he is now, or will be, able to work. At the time of his injury, and on February 4, he was wholly incapacitated for work. This is established not only by the testimony of Roberts but also by that of Dr. Duey, who stated that his condition would improve some but that he would never be well, and that much improvement could not be expected in a man of his age. Where the evidence shows that an injured employee is un-

334

able to work and physicians are unable to say whether the total disability will be permanent, and where the total disability is shown to have existed over an extended period of time, an award for total permanent disability will be sustained. *Armour Grain Corp.* v. *Industrial Com.* 323 Ill. 80.

The judgment is affirmed.

*Judgment affirmed.*