(No. 20959.—

Marie Clausen, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(The Bowman Dairy Company, Defendant in Error.)

*Opinion filed December 17, 1931.*

Cassels, Potter & Bentley, (Ralph F. Potter, Claud D. Raber, and E. Douglas Schwantes, of counsel,) for plaintiff in error.

Montgomery, Hart, Pritchard & Herriott, (Louis E. Hart, and L. Edward Hart, Jr., of counsel,) for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Marie Clausen (hereinafter designated as petitioner) filed with the Industrial Commission her claim for compensation, alleging that her husband, Louis Clausen, died as the result of an accident sustained in the course of his employment by the Bowman Dairy Company (hereinafter designated as respondent). The arbitrator held that petitioner was entitled to compensation and awarded her $19 per week for a period of 217 weeks and $2.67 for one week. The Industrial Commission, reviewing the record of the arbitrator and hearing the testimony of Dr. A. A. Goldsmith, who did not testify before the arbitrator, reversed the arbitrator's award, finding that before his death Clausen had been paid $424.33 on account of temporary total incapacity for work and that petitioner was not entitled to any additional amount because the injury was not the cause of Clausen's death. The superior court of Cook county affirmed the decision of the Industrial Commission, and the cause is here upon writ of error allowed for further review.

The sole question in dispute is whether there existed such causal relationship between the injury sustained by Clausen and his death as to warrant an award under the statute.

On May 6, 1928, Clausen, a man fifty-nine years of age, was kicked by a horse. Dr. John Buckley, who attended him that day, testified that in giving the history of the accident Clausen said he could not say for certain whether he had been kicked more than once, but thought that he received a direct blow on the back, over the kidney, and a glancing blow down in the groin. He had been working for respondent for eight years, missing only four days in that time. Petitioner testified that previous to May 6 he ate regularly and slept well; that on that day he came home from work about noon, telling witness that he had been kicked in the stomach; that his abdomen was swollen at a point indicated by witness and described by the doctors as

McBurney's point; that while he was at home he was attended by Dr. Buckley; that his urine was "all blood;" that at twelve o'clock that night he was taken to the Jackson Park Hospital, where he remained about three weeks and was then brought home; that about the middle of August he was taken to the Woodlawn Hospital overnight for re-examination and was then brought home; that he went to work for respondent again in October and worked about two months, during which time he appeared sick and weak and had pains; that after the injury he complained of pains about his stomach, and that on December 8, 1928, while working, he got sick and was brought home in an automobile, remaining at home from about noon until midnight, when he was taken to the Woodlawn Hospital, where he died the next day at eleven o'clock.

Three doctors testified before the arbitrator for the petitioner and three doctors were called by the respondent. Dr. Chester C. Guy, a coroner's physician, called by both sides, testified that he performed a post-mortem on Clausen and that death resulted from a generalized peritonitis secondary to a ruptured gastric ulcer. He also testified that there were two other ulcers in the lining of the stomach— a round one which was one centimeter in diameter and which was not perforated, and another one eight millimeters in diameter, one edge of which was on the pyloric ring and the edges of which were markedly scarred and thickened, as was also its base, which penetrated into the muscle layer of the stomach; that the kidneys were normal; that the heart was enlarged, particularly in the left ventricle and right auricle; that the muscular walls were thinned and extensively scarred; that the trisupid valve was somewhat scarred and the mitral valve very badly scarred and deformed and shrunken; that there was evidence of foreign matter or pus in the abdominal cavity; that in witness' opinion the scarred ulcer had been in existence a number of years and the first one described by witness had been

in existence several weeks or months; that in his opinion the ulcers were not caused by external violence, and that in some individuals who have other factors in their bodies believed to be factors of importance in the production of ulcers, trauma to the stomach directly may in some cases develop into ulcers, but ulcers from such cause would appear immediately and if not produced immediately they are not produced at all by trauma. On cross-examination Dr. Guy testified that the blood in the urine was not necessarily due to the injury; that it is very highly improbable that a blow to the lower right abdomen, in the region of what has been described as McBurney's point, which left a mass or slight elevation two months later which resembled an imprint of a horse's hoof, would affect the structure of the stomach; that witness found no evidence that the blow had produced sufficient damage either in the abdominal wall or in the contents of the abdomen to leave any evidence of it, and that, assuming a scarred ulcer such as that described by witness and that the individual received a blow as described, witness did not think the blow would be expected to disturb the tissue structure about the ulcer.

Dr. R. K. Packard, called by respondent, stated that he first saw Clausen at midnight on December 8, 1928; that he was then in a state of shock and collapse; that he had a decompensating heart; that he gave a history of having had gastric disturbance over a long period of time—witness would say over five or six years; that witness operated on Clausen; that there was enough old infiltration of long standing to make it necessary to resect the ruptured ulcer in order to close and get union with new structures; that the incision was closed and drainage put in the abdomen, because there were large quantities of undigested food and purulent matter in the abdominal cavity; that in performing the operation not enough of an exploration was made to see other ulcers in the stomach; that the operation was done under local anesthesia because of the condition of

Clausen's heart; that, based upon the history taken, the examination and the operation, witness was of the opinion that this perforated ulcer was not associated with trauma and that trauma in no way contributed to his death, and that the consensus of opinion is that ulcers that give rise to such symptoms and extent of perforation are of several years' duration. On cross-examination Dr. Packard testified that he never saw a case of ulcer resulting from trauma; that it was not just as possible that the trauma affected the ulcer, though remotely possible but "far-reached from probable;" that the trauma would possibly cause internal inflammation in the area over the injury, and that a system that contains a heart with systolic murmurs and mitral murmurs and with an ulcer of the stomach is not in a position to withstand the shock of the trauma and the inflammation of the area directly under the area of the contusion as well as a perfectly normal system.

Dr. Buckley, called by respondent, testified that he attended Clausen between one and two o'clock in the afternoon of May 6, 1928, and found a contusion in the right lower quadrant of the abdomen, quite well down in the angle, considerably below the umbilicus and possibly to the right of the bladder, its area being about three square inches; that there was a contusion posteriorly on the right side below the ribs, over the lower segment of the right kidney; that there was also some rigidity over the stomach; that witness took samples of the urine to his office; that to the naked eye it was apparently blood; that he examined it with a microscope and the sediment was full of red blood cells; that at first he thought Clausen had a bladder rupture; that witness sent him to the hospital that night; that he left the hospital May 22, at which time the urine was free from blood and had been for ten or twelve days; that he had at the time of leaving, as he had when witness saw him first, a mitral leak, with an enlarged heart; that in the hospital he had a slight edema,

and upon coming out and walking around he developed a more marked edema of the extremities; that after he left the hospital witness saw him every week or so, either at his home or at witness' office; that in October witness suggested he could go to work if they could give him easy work; that witness was present while Dr. Packard performed the operation on December 9; that a great deal of purulent fluid was removed from the abdomen; that peritonitis had set in; that witness did not think the injury had any bearing on the development of the ulcer; that the walls of the ulcer were markedly indurated, which would indicate that the ulcer was not of recent origin; that Clausen made no report to witness about any stomach difficulty until a little while before his death, and that the evidence of trauma which witness found was sufficient to cause the disturbance to the tissue of the urinary tract.

Dr. Holger N. Hoegh, called by petitioner, testified that he had known Clausen professionally since November, 1927, at which time he complained of pain about the region of the lower pole of the left kidney; that he had infected teeth and a slight systolic murmur and some pitting of the shins; that he denied having any acute pains in the stomach or any relation of pain to food intake or food aggravation; that witness gave medication for kidney congestion and advised caring for the teeth, which was done; that in January or February, 1928, he was much improved; that witness examined him July 11, 1928, some two months after the accident, and found an elevated area of doughy feel, irregular in shape, between five and six inches across, over the right hypogastrium, resembling the imprint of a horse's hoof, the upper limit not more than one inch above the plane of the umbilicus; that witness ascribed this to a hematoma which had been largely absorbed; that on the same date his heart was greatly enlarged; that there was a marked systolic murmur, prolonged, and a weak closure of the aortic as compared with formerly; that witness saw

him again at witness' office on September 12; that he had climbed stairs, and when witness saw him fifteen or twenty minutes later he was very short of breath, and that witness told him he was not in shape to go back to work. Dr. Hoegh further testified that he could conceive of the hoof being directed upward and inward, and that it was possible in a man as tall as Clausen that he had a stomach fundus of which the extended wall below the umbilical line was contused by the kick, and that a strong blow over an artery of the stomach in a man of that age could rupture it and cause hemorrhage, and even slight infection in the mouth would cause an infection leading to the production of ulcer.

Dr. Alfred J. Mitchell, called by petitioner, in answer to a hypothetical question stated that there was no direct causal connection between the ruptured gastric ulcer and the injury, but that an individual who presents a cardio-vascular-renal disturbance and who also shows ulcer formation in multiple numbers is an individual who re-acts precipitately to trauma, and that the blow in this case, while not directly over the stomach, did have a causal connection with the condition from which Clausen died; that the resistance of the individual was unquestionably lowered by the injury and was sufficient to aggravate a pre-existing ulcer, and that the injured died as a result of a ruptured gastric ulcer, aggravated by injury. On cross-examination he testified that he did not know of a gastric ulcer being caused by a blow which did not hit the stomach, and that the hypothesis is pretty well established that a blow is not directly followed by an ulcer unless it is immediately over the area; that a perforation may occur independently of any trauma; that although there is no direct causal connection, witness believed that there is a reasonable certainty that there may have been an indirect cause, and that it is pretty hard to draw a dividing line in this kind of a case definitely.

Upon review of the case by the Industrial Commission Dr. A. A. Goldsmith was called by the petitioner as a witness. In answer to a hypothetical question he stated that he could see no evidence that Clausen had stomach trouble before the injury in May and that ulcers may form after injury to the abdomen, "various forms of trauma." Dr. Goldsmith further testified that he had seen one or two ulcers that followed trauma; that the condition of the man's ill-being, especially with reference to the decompensating heart which he had, would have an effect upon the removal of venous blood, which might escape through the rupture of the wall following trauma; that it is very problematical whether this would have any bearing on the rapidity or slowness with which the ulcer would develop following that, and that witness could not say definitely, but it was possible. On cross-examination he testified that the cases to which he referred where ulcers followed trauma were usually cases where the trauma was over the stomach, and he could not say he had seen a case of stomach ulcer where the trauma was away from the stomach.

This court has held that where a workman dies from a pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental his death results from injury by accident. (*Cameron, Joyce & Co.* v. *Industrial Com.* 324 Ill. 497.) However, liability under the Workmen's Compensation act cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence, but such liability must arise out of facts established by a preponderance of the evidence. (*Jolly* v. *Industrial Com.* 341 Ill. 46.) It is a settled rule that the conclusion of the Industrial Commission on a question of fact will not be disturbed unless against the manifest weight of the evidence, regardless of the conclusion this court might reach were it to hear the evidence. (*Allen-Garcia*

*Co.* v. *Industrial Com.* 334 Ill. 390; *Simpson Co.* v. *Industrial Com.* 337 id. 454.) In the present case, bearing directly upon the question at issue, we have the opinion of Dr. Hoegh that it was possible that the stomach fundus was contused by the kick and that a strong blow over an artery in a man of Clausen's age could rupture it, and, with a slight mouth infection, cause an infection leading to the production of an ulcer. We have the opinion of Dr. Mitchell, who had never examined Clausen, that the blow, while not directly over the stomach, did have a causal connection with the condition from which Clausen died; that his resistance was unquestionably sufficiently lowered by the injury to aggravate a pre-existing ulcer 'and that he died as a result of a ruptured gastric ulcer aggravated by the injury. We have the testimony of Dr. Goldsmith, who had never examined Clausen, that he could see no evidence that he had stomach trouble before the injury and that ulcers may form after injury to the abdomen; that he had seen cases of ulcer where trauma was over the stomach though he had never seen a case where the trauma was away from it, and that, though possible, it was very problematical whether the injury would have any bearing on the rapidity or slowness with which an ulcer would develop. On the other hand, we have the testimony of Dr. Buckley that he did not think the injury had any bearing on the development of the ulcer; the opinion of Dr. Packard that the ulcer was not associated with trauma and trauma in no way contributed to the death, and that it was remotely possible but "far-reached from probable" that the trauma affected the ulcer; and the testimony of Dr. Guy that he found no evidence that the blow had produced sufficient damage either in the abdominal wall or its contents to leave any evidence of it, and that it is very highly improbable that the blow would affect the structure of the stomach. Under this state of the record we are

not prepared to say that the finding of the Industrial Commission is against the manifest weight of the evidence, and it must therefore be allowed to stand.

Petitioner cites and relies upon *Carson-Payson Co.* v. *Industrial Com.* 340 Ill. 632, *Simpson Co.* v. *Industrial Com. supra, Cameron, Joyce & Co.* v. *Industrial Com. supra,* and *Jones Foundry Co.* v. *Industrial Com.* 303 Ill. 410. In all those cases we held that findings which supported awards of compensation were not against the weight of the evidence. Here we are not asked to affirm an award made by the Industrial Commission and based upon findings in the petitioner's favor, but to hold that findings made against her claim are in error. In concluding that we are not warranted in so holding we are only making an application of the settled rule which was followed in the cases cited.

Petitioner urges that the arbitrator who heard the evidence in the first instance found in her favor and that this court should give great weight to his conclusion, even to the extent of upholding such finding as against that of the contrary one by the Industrial Commission. Whatever merit there might be in this contention under other circumstances it is without force here, because the hearing before the Industrial Commission was not alone upon the record made before the arbitrator. The commission heard further testimony offered by petitioner, and its finding consequently rested upon a different basis altogether.

The judgment of the superior court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*