(No. 22620.—)
VICTORIA BARTO, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE LASALLE COUNTY CARBON COAL COMPANY, Plaintiff in Error.)

*Opinion filed December 20, 1934—Rehearing denied April 9, 1935.*

JOHN J. SHERLOCK, and C. B. CHAPMAN, for plaintiff in error.

MCKENNA, HARRIS & SCHNEIDER, (ABRAHAM W. BRUSSELL, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on writ of error to review the judgment of the circuit court of LaSalle county setting aside an order of the Industrial Commission. That commission

set aside an award to defendant in error made by the arbitrator for the death of her husband, Dominic Barto.

On May 27, 1929, Dominic Barto, while engaged as a miner in the mine of plaintiff in error, suffered an injury to his left eye, occasioned by a small piece of sulphur striking it. Infection arising from the injury resulted in the loss of the use of the eye. By July 16, 1929, the ulcer on the eye was pronounced healed and Barto was discharged from the hospital. On August 23, 1929, he filed an application for adjustment of claim and was allowed compensation for loss of the use of an eye under the Workmen's Compensation act. Barto died on February 17, 1930, from thrombosis in the abdominal region involving the mesenteric artery. On June 2, 1930, the original claim was dismissed, and on November 21 of that year defendant in error filed a petition with the Industrial Commission alleging that the injury so received by Barto resulted in his death. A hearing was had before the arbitrator, who made an award under the Workmen's Compensation act for injuries resulting in death. The commission, on review, found that the petitioner had failed to prove, by a preponderance of the evidence, that the death of Barto was caused by the injury to his eye and set aside the award. On hearing in the circuit court this finding of the commission was set aside and the award of the arbitrator was confirmed.

The issue of fact arises over the cause of the thrombosis resulting in Barto's death. Expert testimony was given by both sides. The medical experts agreed that Barto died from thrombosis of the mesenteric artery. They also agreed that such is caused by an infection and that the point of infection may be in any part of the body. The medical testimony of plaintiff in error tended to show that the ulcer on the eye which had caused loss of its use had healed. Dr. Ralph H. Woods testified on behalf of plaintiff in error that he first saw Barto at the time of the injury to

his eye; that as a matter of routine he examined Barto's teeth and found them to be in bad condition; that he found him suffering from pyorrhea, with pus around the gums. There is no other testimony in the record that Barto was suffering from pyorrhea. Members of his family testified that he did not at any time complain of toothache and that he frequently cracked nuts with his teeth. There is testimony that one with pyorrhea cannot so use his teeth. There is no testimony concerning such condition at the time of his death. Unless the positive testimony of Dr. Woods is to be disbelieved, (and other testimony on the subject is largely negative,) Barto suffered from pyorrhea. As Dr. Woods is not impeached or directly disputed, and as the record is barren of direct proof as to the condition of Barto's teeth at the time of his death or shortly prior thereto, we conclude that the greater weight of the evidence is that Barto was suffering from pyorrhea.

Dr. George Klumpner testified for the defendant in error that he performed an operation on Barto on the 14th of February, 1930, by opening the abdomen, and found multiple thrombi in the small branches of the mesenteric artery, involving about three feet of the small intestines; that nothing could be done to relieve that situation and the wound was closed and he was returned to a bed in the hospital. He testified that no source of infection in the abdomen, other than the showing of thrombi, was found. He also testified that such infection need not have been in any particular place of the body or even close to the place where the thrombi appear.

Dr. J. H. Edgcomb testified that he was called to see Barto on the evening of February 14 by Dr. Klumpner. He testified to the operation and the finding as detailed by Dr. Klumpner. He also testified that the primary cause of thrombosis is foreign particles flowing in the blood stream by reason of an infection somewhere in the body. He answered, in response to a hypothetical question, that the

thrombosis might have been caused by the infection in the eye; that he did not know that was what caused it but such might have been the cause, or it might have come from an infection in some other part of the body, including the teeth. He stated that if Barto had infected or bad teeth it was possible for the infection to come from such source; that he did not know that it would be more likely to come from infected teeth than from an infected eye, and that he did not know any way to differentiate between infections as constituting a cause of thrombosis. Dr. Klumpner also testified that thrombosis might come from infected kidneys or from infected teeth. He stated in answer to a hypothetical question that the infection of the eye might have caused the thrombosis. The medical testimony tended to establish that patients do not recover when they have an extensive thrombi, though recovery may occur in milder cases by taking out small sections of the bowel.

Dr. Karl I. Stevens testified, in answer to a hypothetical question, that there could be a causal relation between the facts stated in the question and the man's death. Whether it would be just as reasonable to assume the thrombosis was caused by the teeth would depend on what the teeth showed. The question did not include it. If there was pus at the gums and some loose teeth that would be another source of infection that should be considered. He would not say that one source was as acceptable as the other, as the condition of the mouth was one the blood would get used to. Diagnosis of the teeth is uncertain without a skiagraph.

Dr. W. W. Grieves testified that he first saw Barto on March 29, 1929; that he was then suffering from pain in the abdomen; that the abdomen was somewhat distended and tender, and that examination disclosed a case of infection of the gall bladder, as near as he could determine without an exploratory operation. He stated that he suggested such an operation, but Barto did not consent to it

and it was not performed. He was of the opinion that notwithstanding what developed just prior to Barto's death, Barto was in March previous to his death suffering from an infection of the gall bladder. Barto was then in the hospital about a week. The testimony shows that after this illness he returned to his work as a miner.

The question whether the infection in Barto's eye had been completely eradicated before his last illness was also an issue of fact. Dr. C. S. VanAtta, called by plaintiff in error, testified that he examined Barto's eyes for glasses on October 11, 1929, four months before his death. He found Barto blind in his left eye, but found no discharge and no active ulcer in either eye at that time. The eyelids were slightly reddened but no discharge. He testified that he found the scar of an ulcer on the left eye, which showed the ulcer had healed, and that he gave no treatment other than to provide glasses. Other medical experts testified on behalf of the plaintiff in error that when they saw Barto, following his discharge from the hospital after the injury, there was no discharge from the eye. Several lay witnesses, however, testified to having seen a greenish-yellow pus discharged from Barto's eye following the injury to the eye up to the time of his last illness.

We are of the opinion, on examination of the entire record, that the preponderance of the evidence shows that pus was occasionally discharged from this eye even up to the time of Barto's death. There is likewise medical testimony tending to show that an infection may still exist though an ulcer be healed over, in which case the infection is discharged into the blood stream. It is clear, however, from this record, that, as in this case, where there is more than one point of infection, medical experts cannot determine from which infection the thrombosis arose. It is also clear from the testimony that prior to the injury to the eye Barto worked continuously at his trade as a miner, with the exception of one week spent in the hos-

pital in the latter part of March, and that after the injury he tried at times to work but was unable to continue. The question here is, Does this record show by manifest weight of the evidence that the thrombosis was caused by infection of the eye? If it does not, this court is required, under the rule long established in this State, to confirm the finding of the commission in this regard, since it is the fact-finding body provided by the Workmen's Compensation act. (*Monark Battery Co.* v. *Industrial Com.* 354 Ill. 494; *Peters Machinery Co.* v. *Industrial Com.* 346 id. 403; *Armour Grain Co.* v. *Industrial Com.* 323 id. 80.) It is equally well settled that it is incumbent upon the applicant to establish, by a preponderance of the evidence, a causal connection between the injury and death. (*Berry* v. *Industrial Com.* 335 Ill. 374; *Illinois Bell Telephone Co.* v. *Industrial Com.* 325 id. 102; *Atlas Brewing Co.* v. *Industrial Com.* 314 id. 196.) Unless this court is satisfied that the decision of the commission is manifestly against the weight of the evidence we are required to confirm its finding. (*Clausen* v. *Industrial Com.* 346 Ill. 474; *Simpson Co.* v. *Industrial Com.* 337 id. 454.) We conclude that Barto suffered from more than one source of infection, either of which could have been the contributing cause of thrombosis. Since this is true, and since the record does not show, and, as the doctors testify, it cannot in this case be determined, from which source the thrombosis arose, the circuit court was not warranted in setting aside the finding of the commission.

As the petition filed by Barto in his lifetime was dismissed on defendant in error's motion, no question of liability for payments thereunder prior to his death arises here.

The order and judgment of the circuit court are reversed and the award set aside.

*Judgment reversed and award set aside.*