# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

(No. 14833.—Judgment affirmed.)

THE IMPERIAL BRASS MANUFACTURING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (MINNIE WEST, Defendant in Error.)

*Opinion filed December 19, 1922.*

1. WORKMEN'S COMPENSATION—*when disobedience of order of the employer does not take employee out of sphere of employment.* Where a janitor suffers an injury resulting in death from breathing fumes of sulphuric acid which he was using for cleaning purposes, the fact that his employer had forbidden the use of the acid does not bar the right of a dependent to compensation under the statute, as the failure of the employee to obey such order does not remove him from the sphere of his employment but only constitutes negligence.

2. SAME—*dependency is a question of fact for the Industrial Commission.* Dependency, and the extent thereof, are questions of fact for the Industrial Commission, and the courts will not interfere when such facts are controverted unless it can be said that the finding of the commission is against the manifest weight of the evidence.

3. SAME—*what is test for determining dependency.* The test for determining dependency is whether the contributions of the deceased were relied upon by the dependent for his means of living as determined by his position in life, or whether the dependent was to a substantial degree supported by the employee at the time of the employee's death.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

JOE BEATTY BURTT, and ERNEST C. RENIFF, for plaintiff in error.

AUGUSTINE J. BOWE, and WILLIAM J. BOWE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Alexander Hendry, a janitor employed by the Imperial Brass Manufacturing Company, on July 9, 1920, inhaled fumes of sulphuric acid which he was using in cleaning a urinal which it was his duty to clean and his death ensued as a result. Minnie West, his daughter, made application to the Industrial Commission for an award of compensation under the Workmen's Compensation act, and an award was made to her of $9.83 a week for 208 weeks and eighty-six cents for one week, in accordance with paragraph (c) of section 7, as being fifty per cent dependent upon the earnings of Hendry. The circuit court of Cook county upon a writ of *certiorari* reviewed the judgment, and finding that the exact proportion of dependency could not be determined, set aside the finding in that respect and modified the award to require the payment of $12 a week for 137 weeks and $6 for one week. This writ of error was awarded to review the record.

Two questions are presented by the plaintiff in error: First, did Hendry's death arise out of and in the course of his employment? Second, was the claimant dependent on his earnings?

The evidence establishes clearly that Hendry's death was the result of the accidental inhaling of fumes of sulphuric acid used in cleaning the urinal, and there is evidence tending to show that he was forbidden to use the acid and directed to use Gold Dust for that purpose. The act of cleaning the urinal was in the course of his employment. It was

what he was hired to do.   Would the violation of the employer's order not to use acid take him out of the sphere of his employment and deprive him of the protection of the Compensation act?   In *Republic Iron and Steel Co.* v. *Industrial Com.* 302 Ill. 401, it was said, on page 406: "Where the violation of a rule or order of the employer takes the employee entirely out of the sphere of his employment and he is injured while violating such rule or order it cannot be then said that the accident arose out of the employment, and in such a case no compensation can be recovered.   If, however, in violating such a rule or order the employee does not put himself out of the sphere of his employment, so that it may be said he is not acting in the course of it, he is only guilty of negligence in violating such rule or order and recovery is not thereby barred.   (*Union Colliery Co.* v. *Industrial Com.* 298 Ill. 561.)   As was said in the case just cited in quoting from the case of *Jackson* v. *Denton Colliery Co.* W. C. & Ins. Rep. 91, (7 B. W. C. C. 92,) it does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been, if he was still acting in the sphere of his employment and in the course of it the accident arose out of it."

In *Chicago Railways Co.* v. *Industrial Board,* 276 Ill. 112, the employee was killed by the sudden jumping forward of one street car into another while he was attempting, as part of his duties, to connect the trolley of the former car to the current.   The rules of the employer required the employee to leave his car in such a condition that it would not have started when he had adjusted the trolley, and the employer contended that the injury which caused the employee's death was not an accidental one arising out of and in the course of his employment because if the deceased had observed the rules of the plaintiff the accident would not have occurred, but it was held that in attempting to connect the trolley with the current the employee was acting in the course of his employment and that what oc-

'curred arose out of his employment, and the fact that he acted negligently and in violation of the rules of the employer would not take him out of his employment nor the accident which resulted in the injury out of the course of his employment.

"The liability imposed by the Workmen's Compensation act has no connection with the negligence of either the employer or the employee. An injury arising out of and in the course of the employment creates the liability without any question of fault on the part of either the employer or the employee." *Decatur Railway and Light Co.* v. *Industrial Board,* 276 Ill. 472.

An employee of a contractor who was unloading stone from cars on a track near elevated railroad tracks climbed out of a car upon an elevated railroad embankment and entered upon the elevated tracks for the purpose of boarding a slowly moving cut of cars to get his tools and clothes from one of the cars. His act of going upon the elevated track was a violation of an ordinance of the city, but it was held that his negligence and unlawful act did not constitute any defense under the Workmen's Compensation act. The violation of the ordinance only tended to show the degree of his negligence and did not shed any light upon the question whether or not the accident arose out of the employment. *Alexander* v. *Industrial Board,* 281 Ill. 201.

In *Union Colliery Co.* v. *Industrial Com.* 298 Ill. 561, the employee was a top-cager at a coal mine. He was killed in the performance of his work, and it was contended that the injury and death did not arise out of and in the course of his employment for the reason that at the time he was riding on the cage to the top for the purpose of dumping a car of coal, and that in so doing he violated paragraph (*b*) of section 12 of the Mining act, which provides that no one shall ride on a cage containing either a loaded or empty car. It was held that conceding that he violated section 12 of the Mining act, the most that could

be said was that in so doing he was guilty of negligence, and that riding the cage to the top of the tipple for the purpose of dumping the car of coal did not have the effect of taking the deceased out of the line or scope of his employment. The contention that the prohibition of the statute against riding the cage with a car on it ought to have the same effect as an order or rule of the employer against riding the cage, was answered by holding that such order or rule of the employer would not bar recovery of the compensation by the employee; that if in violating such rule or order the employee does not put himself out of the sphere of his employment, so that it may be said he is not acting in the course of it, he is only guilty of negligence in violating such rule and order, which does not bar recovery.

The difference between the facts in this case and the facts in the cases cited is only one of degree. The ordinance of the city, the statute of the State, and the order, rule or prohibition of the employer, all alike were binding on the employee and imposed a duty on him to observe their requirements. A failure to do so would not remove him from his employment but only constituted negligence,— a fault on his part which is not material to the question of compensation under the Workmen's Compensation act. Hendry was engaged in doing exactly the thing that he was employed to do. He disobeyed his employer's directions. At common law there would have been no liability on the part of the employer, but under the Workmen's Compensation act the right to compensation exists without reference to the fault of the employer or the care of the employee.

The case of *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, which is relied upon as sustaining the contention of plaintiff in error that the accident did not arise out of the employment, is discussed in the case of *Alexander* v. *Industrial Board, supra,* and it is said in regard to it: "In that case the injured party received his injury while reaching

into an exhaust system to get a piece of metal which he had been polishing and which had fallen from his hands into the exhaust. The machinery upon which the employee was assigned to work was entirely separate and apart from the exhaust system. The exhaust system was in charge of a special, responsible man for the purpose of cleaning and oiling the same, and the injured employee had been specially instructed to have nothing whatever to do with the exhaust system but to notify the person in charge of the same in case anything went wrong. His sole duty in his employment at the time he was injured was to take metal pieces and hold them against a buffing wheel until they were polished. He was not engaged in any business of his employer or in anything connected with his employment when he was injured. He was therefore held in that case not to have been injured while he was working within the scope of and in the line of his employment."

The plaintiff in error also relies upon the case of *Weis Paper Mill Co.* v. *Industrial Com.* 293 Ill. 284, in which the employee was killed while resting, in an interval of his work, on a railroad track in the shade of a box-car, by being run over by the car, which was put in motion by a locomotive engaged in switching. His work had nothing to do with the railroad track or the cars. He was in a place to which his work did not take him and in which he could not reasonably be, and it was held that the accident did not arise out of his employment. That was a case of an injury to an employee who was resting during working hours, and the injury was held not to have arisen out of and in the course of his employment, not because he was not then engaged in his work but because he was engaged in what he was doing at a place where he could not reasonably be. The doctrine was stated in *Dietzen Co.* v. *Industrial Board, supra,* quoting from *Moore* v. *Manchester Liners,* (1910) A. C. 498, that an accident to an employee occurs in the course of employment when it takes place "while he is do-

ing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing." This same statement is repeated and approved in *Mueller Construction Co.* v. *Industrial Board*, 283 Ill. 148.

In *Richards* v. *Indianapolis Abattoir Co.* 92 Conn. 274, the deceased, who had been engaged in hard work in the cold, while waiting to use an elevator to make a delivery sat down a few feet from a boiler to warm himself and went to sleep and awakened to find himself afire, and it was held that the injury sustained arose out of and in the course of his employment. The court said: "An injury to an employee may be said to arise 'in the course of his employment' when it occurs within the period of his employment at a place where he reasonably may be and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it." It was on that principle that the case of *Weis Paper Mill Co.* v. *Industrial Com. supra,* was decided, but that decision has no application to this case.

The claimant was a widow whose husband had been dead for six or seven years. She and her father had lived together in a flat for several months. She owned the furniture. He paid the rent and household expenses, and her unmarried daughter, who was employed, gave her $10 a week. She afterward sold her furniture for about $200 and went to New Jersey, where she remained three months, living with relatives. During this time her father sent her $5 or $10 a week. When she returned to Chicago she lived with her daughter and son-in-law in a flat, and her unmarried daughter also lived there. The son-in-law paid the rent, $35 a month, and the gas and light bills, and the claimant paid the household expenses. Hendry did not live there, but he came to the house every Saturday or Sunday and gave his daughter $10 a week. The unmarried daughter was earning $17.50 a week, which she gave to her

mother, but her mother gave $2 or $3 of it back to her for car fare and incidental expenses. Out of the remainder of what her unmarried daughter earned and the $10 a week which her father gave her, she paid that part of the expenses which she bore and bought clothes for herself and her daughter. Deducting the cost of the daughter's clothes and of her board and lodging, which the evidence tended to show was in the neighborhood of $10 a week, it is apparent that a large part of the claimant's support was derived from the $10 a week which her father gave her. She had no other means of support except a savings bank account of $1000, which she and her father had deposited in their joint names. This money must be taken into account in determining the extent to which she was dependent on her father, but it is manifest that $1000 is not alone a sufficient means of permanent support. She had no employment before her father's death except the care of the flat in which she lived with the other members of the household and the management of the household. Dependency, and the extent thereof, are questions of fact for the Industrial Commission, and the courts will not interfere when such facts are controverted unless it can be said that the finding of the commission is against the manifest weight of the evidence. (*Otis Elevator Co.* v. *Industrial Com.* 302 Ill. 90; *Keller* v. *Industrial Com.* id. 610.) The test for determining dependency is whether the contributions of the deceased were relied upon by the dependent for his means of living as determined by his position in life, or whether the dependent was to a substantial degree supported by the employee at the time of the employee's death. Under this rule the claimant was dependent to some extent upon her father for her support at the time of his death.

No other error has been argued, and since the exact proportion of dependency could not be ascertained, the judgment of the court modifying the award and reducing it to the minimum amount directed by the statute will be affirmed.

*Judgment affirmed.*