LOUIS MEHAY, Plaintiff in Error, *vs.* INDUSTRIAL COMMIS-
SION *et al.*—(THE ILLINOIS STEEL COMPANY, Defend-
ant in Error.)

*Opinion filed February 17, 1925.*

1. WORKMEN'S COMPENSATION—*common law rules as to admis-
sion of evidence and burden of proof apply.* In proceedings under
the Compensation act the rules respecting the admission of evi-
dence and the burden of proof are the same as those which prevail
in common law actions for personal injury.

2. SAME—*it is the duty of the Industrial Commission to weigh
the evidence.* It is the duty of the Industrial Commission to weigh
the evidence heard by it and to make its finding in favor of the
party in whose favor the evidence preponderates.

3. SAME—*courts will give due weight to finding of commission.*
In a compensation case, where the facts are controverted and their
determination depends upon the credit to be given contradictory
testimony, the courts will give due weight to the finding of the
Industrial Commission.

4. SAME—*when finding of the commission will not be set aside.*
Whether the claimant for compensation has sustained accidental
injuries and whether his disability is the result of an accidental
injury arising out of and in the course of his employment are
questions of fact, to be determined in the first instance by the In-
dustrial Commission, and where the facts are controverted the
courts will not interfere with the finding of the commission un-
less it is manifestly against the weight of the evidence.

WRIT OF ERROR to the Circuit Court of Cook county;
the Hon. HARRY M. FISHER, Judge, presiding.

FRED A. GARIEPY, for plaintiff in error.

KNAPP & CAMPBELL, (JOSEPH L. EARLYWINE, of coun-
sel,) for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

Plaintiff in error, Louis Mehay, made application to
the Industrial Commission for an adjustment of his claim
against defendant in error, the Illinois Steel Company, June

11, 1923, alleging that he was suffering from a disability
arising out of an accident occurring in the course of his
employment on October 29, 1920. Thereafter his petition
was amended so as to show that the date of the accident
was September 27, 1920. The arbitrator before whom the
hearing was held decided that plaintiff in error was not en-
titled to recover for the reason that he did not sustain the
accidental injuries of which he complained and that the dis-
ability of which he complained was not the result of an ac-
cidental injury. There was a review before the Industrial
Commission and the decision of the arbitrator was ap-
proved. This decision of the Industrial Commission was
confirmed by the circuit court of Cook county, and leave
has been granted to prosecute this writ of error for fur-
ther review.

Louis Mehay testified before the arbitrator that he was
employed by defendant in error as a mechanic; that on
the day he was injured, September 27, 1920, he was ad-
justing a heavy gear to a large shaft; that the shaft moved
out of line and he went to get a pipe to use in prying it
back in place; that while he was carrying the pipe he slipped
and fell on his back; that he felt something crack when he
fell; that he had noticed a little weakness in his back when
he was lifting the big shaft, but that after he had fallen
the pain increased so that he was unable to continue his
work; that for a day and a half he tried to continue with
his task, but the pains increased; that he then reported to
Dr. Culver, at the hospital of defendant in error; that he
told the doctor that he had fallen and hurt his back; that
the doctor examined him and told him he had a cold in his
back and that he should go home and keep hot blankets on
it; that he remained at home two weeks after Dr. Culver
had sent him there; that five weeks after the accident he
was sent to the company hospital; that he stayed there two
and one-half months; that he was treated there by Dr. Cul-
ver; that he was discharged from the hospital January 6,

1921, and Dr. Culver gave him a card directing his foreman to furnish him light work; that he continued to work ten hours a day from that time until May 3, 1923; that for six months after he was discharged from the hospital he reported for massage treatments three times a week; that in May, 1923, he was sent by Dr. Culver to Dr. Davis; that on May 22 he went to Dr. Test for treatment. When he was recalled before the arbitrator he said he first reported to Dr. Culver on October 3. Before the Industrial Commission he testified that he had never been sick and never treated by a doctor for pain in his back prior to September, 27, 1920, and that he had suffered no injuries to his back since that time; that prior to his injury he was able to bend over and touch the floor with his fingers, and that when he left the hospital in January, 1921, he was able to bend over only half way; that after the operation on his back by Dr. Test, in August, 1923, he was again able to bend over and touch the floor with his fingers.

Mike Zeburn testified that he was working for the Illinois Steel Company in September and October, 1920; that he saw Mehay fall while he was carrying a pipe; that Mehay worked a day and a half after his fall; that witness missed him at the plant and went to his home to see what was the matter; that Mehay was not at his home; that about a week later witness went to the hospital and saw him there; that he is sure Mehay fell in September, but that he does not know the exact date.

Dr. F. C. Test testified before the arbitrator that he first saw Mehay at the Northwestern University Dispensary May 22, 1923; that Mehay gave him a history of his injury and said it had occurred over two years before; that he examined him and had an X-ray picture made; that Mehay's back was stiff and was shifted materially to the right; that a plumb line dropped from the base of the skull fell two or three inches to the right of the lower end of the spinal column; that he bent over slowly and stiffly and re-

covered himself with pain; that he bent slightly to the right and not at all to the left; that the X-ray revealed broadened and lengthened transverse processes on both sides of the fifth lumbar vertebra; that the crest of the ilium on both sides was roughened; that his interpretation of this condition was that Mehay had sustained a violent strain or twisting blow in the lower part of his back; that this strain or blow loosened the ligaments connecting this lumbar vertebra with the pelvis and sacrum; that his experience shows that in such cases there is never a return to a completely normal condition; that it is necessary to chisel off that abnormal part of the bone in order to make a greater space between the fifth lumbar vertebra and the sacrum so that they will not rub together on motion of the body; that Mehay's back was naturally different from the normal back, which aggravated the injured condition; that the X-ray showed there had been a strain upon the periosteum of the sacrum, ilium and transverse processes of the fifth lumbar vertebra; that the strain was probably due to the fact that ligaments and muscles attached to these particular points were jerked or pulled by trauma so that the periosteum had been jerked up, and the consequent congestion had produced thickening of bony deposits; that the fact that the X-ray showed bony deposits on the crest of the ilii and a roughening on part of the sacrum showed that traumatism had occurred in two places, which must have been preceded by an excessive twisting of the lower part of the lumbar spine; that, considering Mehay's back and his abnormal transverse processes, he did not think the conditions shown could have been caused by anything except a violent strain. Before the commission he testified that he first saw Mehay about the middle of May, 1923, and that he was under his care from that time until the hearing before the commission, in October; that he performed an operation on Mehay's back August 16; that the purpose of the operation was to sever the enlarged transverse pro-

cesses and thus relieve the strain on the ilio-lumbar liga-
ments, which caused the pain and disability; that the fourth
transverse process was in the way and he chiseled it off so
he could get at the fifth; that he chiseled through the fifth
and found the tips attached so far under the pelvic bone
that he did not remove them but took out a section of each,
which had the same effect; that he thus freed the spine
from the ilio-lumbar ligament and gave Mehay relief from
pain; that the only way to give him relief was to cut off
as much as possible of the transverse processes, so as to
separate the spine from the ligaments and thus do away
with the stress of pulling on the inflamed ligaments with
every motion of the body; that the original injury tore
part of the ilio-lumbar ligaments loose, and that caused an
undue strain on those that remained; that to relieve this
strain he cut loose the ligaments that were not torn; that
he considered the operation successful and that it proved his
theory, because after it Mehay was able to stand erect and
to bend his back without severe pain.

Dr. H. R. Culver, one of the staff at the Illinois Steel
Hospital, testified that he first saw Mehay on October 30,
1920; that Mehay complained of a strain of his back from
lifting but did not say that he had injured his back in a
fall; that he made an examination of Mehay and found no
swelling nor discoloration nor other evidence of injury;
that he came to the hospital from time to time until De-
cember 10; that he then placed him in the hospital for ob-
servation and kept him there until January 11, 1921; that
he diagnosed his case as lumbago and Mehay was treated
for that ailment; that he returned to the hospital for mas-
sage treatments from time to time until June; that on two
occasions while he had Mehay in the hospital for obser-
vation he saw him bend over and touch the floor with his
fingers; that Mehay came back to the hospital for treatment
in February, 1923; that he gave him a thorough examina-
tion but found no evidence of injury; that he found him

to be suffering from chronic lumbago; that he did not see or treat Mehay between June, 1921, and February, 1923.

Dr. C. H. Ogden testified that he examined Mehay at the Illinois Steel Hospital May 14, 1923; that he complained of an injury sustained in October, 1920; that he stated he was lifting with a bar and the bar slipped and struck him in the left groin and caused a rupture; that he wanted an operation for rupture; that an examination showed that he had no rupture.

Dr. George G. Davis, Dr. Hollis E. Potter, Dr. John Hubeny and Dr. Edward S. Blaine, physicians who specialize in Roentgenology, read skiagraphs of Mehay's back, and all of them testified that there was no evidence of injury to the backbone; that the enlarged fifth transverse process and the roughening on the crest of the ilii were congenital and did not indicate that there had been a strain of that part of the back.

S. H. Brown, chief timekeeper for defendant in error, testified that he kept the work record of plaintiff in error; that Mehay had worked for defendant in error prior to 1920; that he returned to work January 22, 1920, and worked continuously until November 21 of that year; that he was off eight days and returned to work November 30; that he worked three days and was off from December 3, 1920, to January 12, 1921; that he worked continuously from January 12, 1921, to May 4, 1923; that he was working September 27, 1920, and lost no time from that day to November 21 following; that during his employment he was doing the work of a machinist and was working ten hours a day, except in slack periods, when he worked nine hours.

In proceedings under the Workmen's Compensation act the rules respecting the admission of evidence and the burden of proof are the same as those that prevail in common law actions for personal injury. (*Kivish* v. *Industrial Com.* 312 Ill. 311; *Chicago Daily News Co.* v. *Industrial Com.*

306 id. 212.)   It is the duty of the Industrial Commission to weigh the evidence heard by it and make its finding in favor of the party in whose favor the evidence preponderates.   (*Camp Spring Mill Co.* v. *Industrial Com.* 302 Ill. 136.)   Where the facts are controverted and the determination of a disputed question of fact depends upon the credit to be given contradictory testimony the courts will give due weight to the finding of the commission, which is qualified by experience and special study to weigh facts applicable to cases within its jurisdiction.   (*Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Keller* v. *Industrial Com.* 302 id. 610.)   Whether the claimant has sustained accidental injuries and whether a disability of the claimant is the result of an accidental injury arising out of and in the course of his employment are questions of fact to be determined in the first instance by the Industrial Commission, and the courts will not interfere when such facts are controverted, unless it can be said that the finding of the commission is manifestly against the weight of the evidence. *Imperial Brass Co.* v. *Industrial Com.* 306 Ill. 11; *Field & Co.* v. *Industrial Com.* 305 id. 134.

The claim of plaintiff in error that he was injured September 27, 1920, is corroborated only by the testimony of Zeburn, and his testimony is indefinite and unsatisfactory. That he received an injury to his back sometime some place is corroborated by the testimony and findings of Dr. Test. On the other hand, nearly all of Mehay's statements are controverted by credible evidence, and his own testimony is in many respects contradictory.   He says that he was injured September 27 and that a day and a half later he went to see Dr. Culver, but he gives the date of his first visit to Dr. Culver as October 3.   He says that he was home for some weeks after he was injured and later was sent to the hospital, where he remained two and one-half months.   The work records, however, show that he was employed steadily from September 27 to November 21, 1920, that he was ab-

sent from work eight days during November, and that he was in the hospital a month, covering the latter part of December and early part of January. Dr. Culver says that when Mehay came to him October 30, 1920, he complained of a strained back from lifting and made no complaint of an injury from falling. Dr. Ogden says that Mehay told him he was injured in October, 1920, by a blow in the groin which caused a rupture.

Without further analysis of the testimony in this record it is clear that the finding of the Industrial Commission was well supported by the evidence. Certainly it cannot with reason be said that the finding of the Industrial Commission was manifestly against the weight of the evidence. This being true, the finding must be sustained.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*