(No. 20946.—

THE PETERS MACHINERY COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PAUL PRICE, Plaintiff in Error.)

*Opinion filed December 17, 1931.*

JOSEPH W. KOUCKY, for plaintiff in error.

MOLONEY & POSTELNEK, (MATTHEW J. O'BRIEN, and B. F. MARTIN, of counsel,) for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, Paul Price, filed his claim for compensation with the Industrial Commission against the Peters Machinery Company, a corporation, on account of personal injuries. There was a hearing before an arbitrator, who found that plaintiff in error was entitled to an award, and the Industrial Commission affirmed the finding. The circuit court of Cook county, upon *certiorari,* set aside the award, and the case comes to this court for review.

The only question for review is whether plaintiff in error sustained an injury which arose out of and in the course of his employment. He testified that on February 20, 1930, he was employed as a window-washer by the Peters Machinery Company. On that day, while he was washing windows, he felt a pain in the third finger of his right hand as if a sliver were in his finger. He had not felt any pain before that time. He went to William J. Schumacher, the utility man of defendant in error, who administered first aid. He asked Schumacher to see whether there was a sliver in his finger. He showed Schumacher the place where the pain was. There was some swelling at that point and it was red. Schumacher washed the finger and put iodine on it. The next day plaintiff in error showed Schumacher the finger, which was considerably swollen. A day or so later Schumacher sent plaintiff in error to the assistant superintendent. The superintendent and the assistant superintendent sent plaintiff in error to Dr. Kort. The doctor lanced the finger a little the first day, more the next day and treated it four or five times, but it continued to grow worse. Plaintiff in error was treated at

two dispensaries and at Rush Medical College but received no relief. In March he went back to his job and was sent to see Dr. Kort, who sent him to the doctor for the insurance company, and the finger was amputated at the knuckle. In washing windows plaintiff at times used a round, smooth, wooden pole. He testified that he did not take a sliver out of his finger and did not know whether the doctor took one out.

William J. Schumacher testified that on February 20, 1930, he was the utility man for defendant in error. On that day Price asked him if he thought he had something in his finger. Schumacher washed the finger with a preparation the doctor had prepared and painted the finger with iodine. He could not find any mark of a sliver. There was a little red spot and a little swelling on the finger. The next day Price said it did not look good and it hurt. Schumacher told him the only thing he could do would be to see the superintendent. He testified that the finger must have been jammed or hurt some way. The first day the finger did not look bad enough to send Price to a doctor or to the superintendent. The witness thought at that time that it might be a little bump, which would go away, so he put on the iodine.

Dr. Kort testified that he treated Price the first time on February 24 for an advanced, extensive infection in the finger. When he first saw it it was marked by extensive swelling, which showed signs of infection which had been going on for at least two weeks. There was no evidence of any injury outside of the swelling. The doctor treated him from February 24 to February 28. Price did not follow instructions. On February 29 the doctor went to the home of Price and was told by his wife that he was out of town. The doctor told her when Price came home to send him to the office. The doctor next saw Price on March 24. On that day he incised the finger under a local anæsthetic and found pus and extensive necrosis of the tis-

sue around the finger. The condition was worse and he sent Price to the insurance company. He testified that when he opened the wound there might have been present some small foreign body but he did not see it; that an infection caused by a foreign body does not become so extensive as this one; that general infection caused by a foreign body is rare, and it forms a localized small area in which pus develops; that he had never seen a case where a person received a scratch on the finger which resulted in infection of the entire hand; that a piece of sliver entering the finger could not have set up an infection in the finger and in the hand of the type in question; that it might result in infection and the infection cause osteo-porosis of the hand; that the infection caused a stiffness of the fingers; that there was no infection of the hand at the time he first saw Price; that he did not know what happened after that time; that an infection would start immediately after receiving a scratch, if not properly treated; that in two or three days it would not become serious; that infection might become serious and dangerous in two or three days, depending upon the type of the infection; that any infection might develop into gangrene; that he did not believe the infection could have developed in three days; that there was no swelling or tenderness in the rest of the hand, and that he discovered no evidence of injury except pus.

Dr. Bernard Conway testified that he saw Price on March 19 or 20. At that time he had an infection involving three joints of the finger and extending up the palm and back of the hand. He took Price to the hospital on March 21 and amputated the finger at the knuckle. Since then Price had been coming to his office. When he last saw Price he had some stiffness in the remaining three fingers. The thumb was normal. The index, middle and little fingers are permanently ankylosed. The condition is permanent, and it could have been produced by a scratch or a foreign body entering the finger.

Dr. Nathaniel H. Adams testified that he examined Price on May 16, 1930, and took a picture of his hand. It showed an amputation of the third finger at the knuckle and osteoporosis of the fingers and bones. The fingers were stiff and could not be closed completely into the palm. The little finger could not be forced against the palm and the second and index fingers lacked a half inch of reaching the palm. The condition had reached a permanent stage. There had been some improvement since the last time the doctor had examined Price but the loss of motion was permanent.

The burden of proof was upon Price to prove by a preponderance of the evidence that he was entitled to an award. (*Hahn* v. *Industrial Com.* 337 Ill. 59; *Recklein* v. *Industrial Com.* 337 id. 37; *Libby, McNeill & Libby* v. *Industrial Com.* 326 id. 293.) Where the decision of the Industrial Commission is clearly against the manifest weight of the evidence, or where it is based upon incompetent evidence, the court should set aside the award. (*County of Cook* v. *Industrial Com.* 327 Ill. 79.) It is not the province of the court to weigh conflicting evidence and substitute its judgment for that of the Industrial Commission unless the court can say that the finding of the commission is clearly and manifestly against the weight of the evidence. (*Armour Grain Co.* v. *Industrial Com.* 323 Ill. 80.) The question as to whether the claimant has sustained an injury which arose out of and in the course of the employment is one of fact, to be determined in the first instance by the Industrial Commission, and the courts will not interfere when such facts are controverted unless it can be said that the finding of the commission is manifestly against the weight of the evidence. (*Mehay* v. *Industrial Com.* 316 Ill. 97.) Outside of the testimony of Dr. Kort there is very little conflict in the evidence. Plaintiff in error testified as to when, where and under what circumstances he received his injury. If his evidence is true it arose out of and in the course of his employment. The only doubt that is cast upon his tes-

timony is in the evidence of Dr. Kort in which he stated that the injury was of such a nature, when he first saw it, that it probably had taken two or three weeks for it to develop. When this evidence is considered in connection with the other medical evidence it is not sufficient to justify a court in saying that the finding of the Industrial Commission is against the manifest weight of the evidence, and the circuit court was in error in so holding.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to affirm the award.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*