(No. 21188.—

WILLIAM COPAS, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE UNITED STATES FUEL COMPANY, Plaintiff in Error.)

*Opinion filed June 24, 1932.*

KNAPP, BEYE, ALLEN, COCHRAN & CUSHING, (JOSEPH L. EARLYWINE, and PAUL R. CONAGHAN, of counsel,) for plaintiff in error.

J. R. DEAN, for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

On June 13, 1930, William Copas filed a claim for compensation with the Industrial Commission to recover for injuries sustained as an employee of plaintiff in error. An arbitrator heard the cause on July 29, 1930, and entered an award based on a finding of temporary total disability. Copas sought review by the Industrial Commission, which was granted, and further evidence was heard. On November 30, 1930, the arbitrator's award was confirmed. A writ of *certiorari* was sued out of the circuit court of Vermilion county by Copas, and on April 9, 1931, that court remanded the cause to the commission for the introduction of such further evidence as either party might care to submit. The commission again heard the cause on July 16, 1931, at which time additional evidence was introduced. The original arbitrator's award was again confirmed. A second writ of *certiorari* was sued out of the circuit court by Copas. On October 23, 1931, that court reversed and set aside the findings of the arbitrator and the decisions of the commission, and, finding that Copas was totally and permanently disabled as the result of the injury received, ordered payment based upon such finding. The cause is here upon writ of error allowed for review.

The injury received by Copas was sustained on December 6, 1929, and it was stipulated that it arose out of the employment. The sole question in dispute is whether it caused total permanent disability.

At the time of the injury Copas was forty-four years of age. He was loading a car of coal. While he was holding a shovel full of coal his right foot slipped off a tie and down into a hole claimed by him to be ten inches in depth but alleged by a witness for plaintiff in error to be no deeper than four inches. He fell backward. He testified that he then felt a pain in his back; that he has since had continual severe pains in his back and leg; that

the pain was low down (indicating the lumbar sacral region); that he could not walk without crutches, had not been able to work, and that he had not improved any since the accident. About twenty-eight years before the accident here involved his left leg was fractured, resulting in its being shorter than the other by about two inches.

It is not necessary to set out in detail the testimony of the eleven doctors, including two X-ray experts, who were called to the stand in the course of the several hearings. With the exception of Dr. O. W. Allison, who testified for Copas, none of them expressed the opinion that the accident did cause or could have caused a condition of permanent disability.

Dr. Samuel M. Hubbard, to whom Copas went for treatment in June, 1930, after his discharge from the hospital, where he had been for several months under the treatment of Dr. F. N. Cloyd, plaintiff in error's physician, testified that all he could find was that Copas complained of severe pains in the lower lumbar region and there were no external signs of anything witness could find except the complaintive pain, but that witness would not think Copas was malingering.

Dr. H. F. Hooker, called by Copas, testified that he gave Copas a very careful examination and had X-ray pictures taken of his spine; that there was not any swelling, tumefaction, redness or anything to be found upon inspection; that examination of the pictures did not show any pathology and that the spine appeared to be a normal spine; that there was a little lipping of the vertebræ but not more than found in the average spine of a man of his age, and that he did not find anything in the examination to account for the symptoms of which Copas complained.

Dr. H. F. Garfield, called by Copas, testified that he found a strained sacral-iliac joint on the right side and some muscular rigidity in the lumbar region; that he gave

Copas certain treatments; that Copas claimed these treatments did no good; that the right ilium was rotated forward on the sacrum; that Copas' symptoms are subjective; that, anatomically and pathologically speaking, the witness found nothing to account for the complaints and that he could only deduce that Copas' injury "is in his mind solely."

Dr. Francis W. Barton, called by Copas, testified that he found nothing pathological other than the fact that Copas' teeth were missing and that there was evidence of an old fracture of the thigh; that witness could not say Copas does not suffer pain, but that he could say he saw no reason for him to suffer pain.

Dr. Earl B. Jewell, an X-ray expert called by Copas, testified with reference to a number of X-ray pictures made by him of Copas' body, and gave it as his opinion that they showed a slight widening of the right sacral-iliac synchondrosis and a widening of the symphysis pubis (the space between the right and left pubic bone) about twice the distance it should be in a male pelvis. Dr. Jewell further testified that the widening of the sacral-iliac synchondrosis could be produced from the shortening of one limb, and aside from that he found no pathology in the exhibits which showed the widening; that they appeared to be normal in every respect; that he could not by examining them tell whether the condition found was due to injuries received on any particular date; that the widened condition might be aggravated by a fall or a severe strain, but as a matter of fact witness found no evidence of any recent aggravation when he took the pictures.

Dr. Allison testified that Copas' left leg was about two inches shorter than the right; that in order for him to stand with both feet on the ground his pelvis must be tipped lower on the left side than on the right, and that up to the time of the accident here involved he had walked in that tilted position, which would make a pulling on the sacral-

iliac synchondrosis and some giving or widening of both the pubic bones, and the sacral-iliac synchondrosis would naturally be expected. The witness was then asked a hypothetical question which called for an opinion as to whether the accident here involved aggravated the old condition. He answered that due to the already weakened pelvic condition the added strain would aggravate it; that "the additional strain he received at that time could cause his present disability;" that in witness' opinion the injury received December 6, 1930, "was the last straw that his condition could bear," and that in his opinion Copas never could work in a coal mine as a laborer, shoveling coal. On cross-examination Dr. Allison testified that he had no way of knowing that at the time of the accident the spaces between the sacral-iliac synchondrosis and the pubic bones were wider than normal but that he "imagined" they were. He further stated on cross-examination: "I have no way of showing that this slipping in the hole aggravated a pre-existing condition and can't show it by an X-ray."

Drs. F. A. Baumgarth, F. N. Cloyd, J. D. Fisher and George Steely, who examined Copas, were called by plaintiff in error, and all testified, in substance, that they found nothing, either anatomically or pathologically, to account for Copas' complaints and found no evidence of any injury except the fractured left leg. On cross-examination Dr. Steely was asked, "Now, what do you lay his trouble to?" He replied, "I don't think he has any trouble."

Dr. Leslie H. Dunham, an X-ray specialist, identified X-ray pictures that he had taken of Copas, and testified that the sacral-iliac joints were "perfectly normal" on both sides and showed no evidence of bone change or fracture; that the pubic bones were normal, and he found no pathology in the pictures as a result of trauma, and that the spine was normal. He examined the X-ray pictures taken by Dr. Jewell and testified that they showed normal sacral-

iliac joints; that they showed no undue widening of the sacral-iliac synchondrosis and that the pubic space was normal. He also identified two other X-ray pictures taken by himself on October 31, 1929, which was before the accident, and testified that the lumbar vertebræ shown therein looked practically the same as in the other films and that the sacral-iliac synchondrosis and the pubic bones appeared normal, the same as in the later X-ray pictures taken by witness.

It is not the province of the court to weigh conflicting evidence and substitute its judgment for that of the Industrial Commission unless the court can say that the finding of the commission is clearly and manifestly against the weight of the evidence. (*Peters Machinery Co.* v. *Industrial Com.* 346 Ill. 403; *Clausen* v. *Industrial Com.* 346 id. 474.) In the case at bar the arbitrator awarded compensation to July 29, 1930, on the basis of temporary total disability. Two hearings were had before the Industrial Commission, and each time the commission confirmed the award. Was this decision of the commission, as argued by counsel for Copas, "an unreasonable and unwarranted act, not based on the evidence in this case and against the greater and manifest weight of the evidence," justifying the circuit court "in setting the same aside and awarding an award for permanent and total disability?" We cannot so hold. While Dr. Allison gave it as his opinion that the accident so aggravated the old condition that it could cause the disability and that Copas could never work as a coal mine laborer again, he admitted under cross-examination that he had no way of showing that the slipping in the hole aggravated the pre-existing condition and could not show it by an X-ray picture. From the testimony of Dr. Dunham it appears that X-ray pictures were taken of Copas' back before the accident, and that the condition disclosed thereby was practically the same as the condition disclosed by the

pictures taken after the accident. The weight of the evidence unquestionably was that there was nothing about Copas' condition, anatomically or pathologically, to account for the complaints to which he himself testified. Subsection 3 of paragraph (*i*) of section 8 of the Compensation act provides that compensation payments named by that section shall mean and be defined to be for injuries, and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. There is no sufficient warrant for concluding that the finding of the Industrial Commission was against the weight of the evidence. The circuit court erred in setting it aside.

Counsel for Copas relies on *Carson-Payson Co.* v. *Industrial Com.* 340 Ill. 632. In that case the workman collapsed while performing his duties and died the next day. This court sustained the award of the arbitrator and Industrial Commission, saying that such award had substantial foundation in the evidence, and that the arbitrator was fully entitled, on the facts proven before him, to form the view that the more reasonable conclusion was that for which the applicant contended. It is sufficient to say in the present case that here the award of the arbitrator had substantial foundation in the evidence, and that the arbitrator and commission were fully entitled to form the view that the more reasonable conclusion was not that for which the applicant contended.

Counsel also relies on *Powers Storage Co.* v. *Industrial Com.* 340 Ill. 498, where we upheld an award based on a finding of total permanent incapacity. There the employee while at work fell and struck his head on the floor. He suffered a stroke of paralysis. The witnesses agreed that the paralysis resulted from certain conditions in the brain. The testimony of the witnesses for the applicant tended to

show that the fall and blow to the head occasioned a cerebral hemorrhage, resulting in paralysis, while that of the witnesses called by the other side tended to show that the fall resulted from the hemiplegia. However, these latter assumed in their testimony that the applicant had a pre-existing trouble which produced paralysis without an intervening factor, and the evidence showed that work such as the applicant was engaged in would tend to increase the danger. As to the matter of objective symptoms, we said that the injury was not shown by an examination of the brain but that such an injury has a characteristic result which was present, and that this result was an objective symptom proving the injury. In the case at bar it cannot be said that we are dealing with an injury having a characteristic objective result which is present to prove the injury. There is abundant evidence that there was no such anatomical or pathological basis for the symptoms complained of by Copas. The situations presented by the two cases cited above are very different. *Perry Coal Co.* v. *Industrial Com.* 332 Ill. 328, and *Armour Grain Co.* v. *Industrial Com.* 323 id. 80, in which we held that awards made by the commission were warranted and which are cited by counsel for Copas, are likewise clearly distinguishable.

The judgment of the circuit court is reversed and the cause remanded, with directions to confirm the award of the Industrial Commission.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*