(No. 21312.— )

Bessie N. Dornblaser, Defendant in Error, *vs.* The Industrial Commission *et al.*—(F. E. Compton & Co., Plaintiff in Error.)

*Opinion filed June 24, 1932.*

George A. Schneider, for plaintiff in error.

Paul Farthing, and Chester H. Farthing, for defendant in error.

Mr. Commissioner Edmunds reported this opinion:

Bessie N. Dornblaser filed a claim for compensation with the Industrial Commission for accidental injuries alleged to have been sustained by her as an employee of F. E. Compton & Co. The arbitrator made an award based upon a finding of permanent total disability. On review by the In-

dustrial Commission additional evidence was heard. The commission set aside the arbitrator's award and entered an order awarding compensation upon the basis of temporary total disability. The circuit court of St. Clair county heard the cause on *certiorari* and set aside the order of the commission. By judgment entered in that court the respondent was ordered to pay Mrs. Dornblaser certain enumerated amounts per week, including the sum already accrued on the weekly basis allowed, and also a pension for her life equal to $300 annually. The cause is here on writ of error allowed for further review.

Mrs. Dornblaser was a solicitor for plaintiff in error and was engaged in selling encyclopedias in homes. On January 15, 1930, she boarded a street car in East St. Louis for the purpose of going to call on a prospective customer. At that time she was fifty-three years of age. She testified that the car started as she got aboard and threw her upon a horizontal iron bar which was between the door inside the car and the entrance door; that she struck her right side upon this bar, which prevented her from falling to the floor; that she rode to her destination on the car, called on a customer and walked a short distance to her home; that when she got home she lay down, and that she had since been unable to work. On the next day she called Dr. H. H. Hurd. Dr. Hurd testified that he then examined her and found evidence of a blow along the border of the ribs on the right side, between the eighth and eleventh ribs; that the next day he called an ambulance and sent her to St. Mary's Hospital, where an examination was made of the feces and material that she vomited; that the examinations showed the presence of blood, the report of the feces test showing an occult blood test strongly positive; that a blood count indicated that she had a hemorrhage, and that his diagnosis was that she had an injury to the gall bladder and possibly a rent in the liver, with an intra-abdominal hemorrhage. An operation was postponed be-

cause of her condition. On August 25, 1930, Dr. Hurd, assisted by Dr. O. W. Knewitz, performed an operation upon her at the Christian Welfare Hospital. Dr. Hurd testified that he found a mass of adhesions in the small intestines and incorporating the gall bladder, kinking it in its middle portion; that these adhesions were broken up, but others below, in the region of a former operative incision, were so well organized that no attempt was made to break them up; that there was a scar on the liver on the right lobe extending transversely, its maximum length being an inch or more and its maximum width about a half-inch, being wider in the middle and tapering toward the end; that in his opinion this scar was caused by the injury received; that he could tell that the adhesions which were found in the small intestines and around the gall bladder were caused by the injury, because they were so easily broken and not so well organized; that the longer they go the more solid they are and the more difficult it is to break them up; that in his opinion they were formed within four to ten months before the operation; that Mrs. Dornblaser was disabled as a result of them; that adhesions are caused, as a rule, by irritants coating the intestines; that in all probability they were caused here by the bleeding of the liver, blood accumulating and adhering to the gall bladder and small intestines causing them to adhere to each other; that he could locate the intra-abdominal hemorrhage in the right upper quadrant by swelling and tenderness over the liver and by dullness, which meant that the abdomen did not sound normal when it was struck; that the characteristics of the liver scar which indicated its being comparatively recent were that the scar tissue seemed to be comparatively thin, not so indurated and like it might possibly be easily broken through; that he saw nothing abnormal about the liver and saw no evidence of any previous operation on it, which was looked for because of information that there had been one; that a person who sustained a

traumatic injury, resulting in adhesions about the gall bladder and a tear in the liver, could walk around a week or longer, and that in his opinion the condition of Mrs. Dornblaser was due to the injury received.

At the hearing before the commission Dr. Hurd testified that he examined Mrs. Dornblaser on May 8, 1931; that her temperature was subnormal and pulse rate 96; that there was a marked tremor of the muscles of the left side of the mouth, the fingers of both hands and both eyelids; that she had belching spells; that her right leg had a chilly sensation and was colder than the left; that this condition of coldness of the right leg was present when he examined her in October, 1930; that palpation of the right upper quadrant caused pain, and also in the lumbar and lower lumbar area; that she had pain over the entire abdomen and over the left antrum of the face; that her condition on May 8, 1931, was as bad as, or even worse than, when he saw her last; that he believed there had been some retrogression and that she would never be physically capacitated to do work; that the operation performed by him on August 25, 1930, gave her temporary relief but he did not believe it was a success, and that her condition showed retrogression three months following the operation.

The testimony given by Dr. Knewitz confirmed that of Dr. Hurd with respect to the nature of the adhesions which were found, and he expressed the opinion that those around the gall bladder could have been caused by a severe blow or a hemorrhage. He stated that a hemorrhage sufficient to cause such adhesions would involve "a lot of shock." He expressed the opinion that the tear on the liver was due to injury, causing pressure on the weakest part so that it gave way. He concluded that it would have to be an extremely severe blow to cause the adhesions and the condition of the liver which he found, and that he would not normally expect a person receiving a blow of such severity to walk around one hour after the blow.

Dr. James F. McFadden, a specialist in nervous and mental diseases, examined Mrs. Dornblaser in June and September of 1930 and on May 8, 1931. He testified that he found a tremor of the extended hands and protruded tongue; that at the earlier examinations the tendon reflexes were much decreased but equal; that a sensory examination showed a circular type of decreased sensation to pin prick extending up into the elbow on the left side and in the left leg to the knee; that emotionally she seemed much upset, flushed frequently and occasionally cried; that she was unsteady when standing with feet together and eyes closed; that the nervousness could be caused or aggravated by an accident such as happened and which caused a torn liver, taking into account her age and the several operations that she had previously had; that his diagnosis was that of traumatic neurosis, and that a decrease of the condition would depend upon the progress of her general physical condition. On cross-examination Dr. McFadden testified that he excluded organic nerve disease from his diagnosis because he found no reflex or other change; that while sticking a patient with a pin is a subjective test he treated the finding as objective, because one can tell whether the patient resists or dissembles; that he did not believe a person could simulate tremors because it would be detected, and that the ones he saw could not be voluntary. With particular reference to the last examination made, he testified that the reflexes of the upper extremities were then increased; that the knee and ankle reflexes were increased; that tramuatic neurosis was present and was "quite marked," and that it would continue as long as there were aggravating factors, such as the remains of previous injuries, which were part of the cause of her nervousness.

Dr. T. A. Bryan, called by plaintiff in error, testified that he performed an appendectomy upon Mrs. Dornblaser in 1907; that in 1916 he performed "an operation" in the right lower quadrant of her abdomen; that he found the

bowel somewhat dilated, with adhesions; that he freed the adhesions on the left side; that from 1916 to 1923 she came to see him for "minor ailments;" that in January, 1923, pressure over the right lower quadrant caused pain to radiate to the right shoulder-blade region; that on July 9, 1923, an operation was performed on her by Dr. Hazen and witness for ptosis of the viscera; that "we" found a change in the position of the liver and of the transverse colon and stomach and adhesions of the hepatic flexure; that all of the organs were displaced downward; that there was a rotation of the liver, resulting in downward displacement laterally, from left to right; that in the operation the kidney was replaced upward and closed with deep stitches, the ptosis of the colon corrected by stitches, stitches taken to shorten the gastro-hepatic omentum, adhesions removed between the hepatic and splenic flexure, the cecum fastened to the right iliac fossa, and the liver fastened to the abdominal wall by a stitch through the right lobe. Dr. Bryan testified as to her condition upon a number of subsequent occasions between 1923 and 1929. Among the conditions to which he thus testified were bladder irritation, vomiting, abdominal distention, immobilization of the leg, tremors in the hands, tachycardia and pain in the right sacro-iliac. He further testified that in his opinion the liver scar described by Drs. Hurd and Knewitz was exactly where the stitch was put through the liver in the operation described by witness and that he believed the scar was due to the stitch, and that in his opinion the accident would not account for all the symptoms outlined in a hypothetical question put to witness. On cross-examination he stated that adhesions can be caused by trauma; that hemorrhage of the liver might cause adhesions; that he had seen torn livers; that the operation in 1923 was "not one hundred per cent a success," although she had no serious trouble that he would connect up with it, and that it was "rarely" possible that the gall bladder adhesions were caused by the accident.

Dr. Arthur H. Deppe, a specialist in nervous and mental diseases, called by plaintiff in error, testified that he examined Mrs. Dornblaser on October 22, 1930, and May 8, 1931. He testified that the tremor found was of too great amplitude, coarsely exaggerated and in the province of her will; that his examination revealed no evidence of pathology to the central or peripheral nervous system; that he found no pathological condition to explain the tremor; that she had no objective manifestations of traumatic neurosis, and that from his examination of her nervous system he concluded that on May 8, 1931, she could resume her work as a solicitor.

Dr. Harold Smith, called by plaintiff in error, testified that he examined Mrs. Dornblaser on May 8, 1931. He stated that he found no evidence of any organic trouble or injury to the parts that prevented her from using them, that the injury received would have been a very mild one, and that he was unable to determine any objective evidence of ill-being aside from her complaints. On cross-examination he stated that injury would be a rare cause of occult blood in the bowels and stomach; that only if the injury was severe enough to actually tear the liver and cause hemorrhage about the gall bladder would it be followed, possibly, by adhesions; that blood resulting from injury to the gall bladder would pass into the bowels and might regurgitate back into the stomach; that nervousness could follow trauma, and that if Mrs. Dornblaser had an operation for sagging of the bowel and the injury was received, the old condition could not be aggravated without an actual tearing loose, which would cause great shock and collapse.

Dr. L. G. Harney, called by plaintiff in error, testified that he examined Mrs. Dornblaser on May 18, 1930, and found no evidence of trauma, and that no one can definitely tell the age of adhesions by inspection.

Over objection Mrs. Dornblaser testified at the final hearing that she could not walk over three or four blocks

without pain in the side and exhaustion; that she could not lie on either side; that her sleep was irregular; that she had constant pain in the abdominal region and tenderness in the right upper quadrant and lower lumbar region; that she had headaches every night; that her right leg was cold; that she had tremors of the muscles on the left side of the mouth and of the eyelids and extended hands, and that she could not lift, stoop or reach with her right arm. It will be noted that testimony as to the existence of some of these conditions was given not only by her but by medical witnesses as well.

Certain facts may be taken to have been definitely established. Mrs. Dornblaser had had a number of previous abdominal operations, in the course of which there had been made an extensive re-adjustment of her abdominal organs. Over the period of years thereafter which preceded the accident she had various abdominal and other disorders. At one time her leg was immobilized and at another she had tremors and tachycardia. She was thrown against an iron bar so that her side was lying across it. She was taken to a hospital, where tests made of the feces and vomited material showed the presence of blood. An operation was performed, and easily broken up adhesions were found about the small intestines and gall bladder. A scar was found on the liver. Leaving out of account her testimony as to her symptoms in so far as it was not confirmed by medical testimony, from this point on consideration of the evidence resolves itself largely into a question as to the weight which should be accorded to the opinions of the several doctors on the various points involved. The opinion of Dr. Hurd, who treated the case from the outset and who performed the operation, was that the blow received caused the liver to be torn and that the escaping blood constituted an irritation that produced the adhesions. Even under the theory of Dr. Bryan that the liver scar resulted from a stitch that he had taken in it some years before, the liver

had at some time been torn. Drs. Hurd and Knewitz were the only ones who saw the liver scar, and both testified that it was not a very old one. They, only, saw and handled the adhesions, and both testified that the ones which they broke up were new as distinguished from others which they saw and which were of long standing. That adhesions would result from blood around the parts was stated not only by Drs. Hurd and Knewitz but by Dr. Smith, who testified for plaintiff in error. Dr. Smith also testified that while blood from such injury would not pass into the stomach it would go into the bowels and might regurgitate back into the stomach. As already pointed out, laboratory tests made after the accident showed the presence of blood in the vomit and feces, and the opinion of Dr. Hurd, based upon the blood count as well as the dullness of the abdomen, was that there had been a hemorrhage. Basing his opinion on what he found by examining her, he testified that in May, 1931, Mrs. Dornblaser's condition was worse than in November, 1930, and that she would never be physically capacitated to do work.

Dr. Deppe was evidently of the opinion that Mrs. Dornblaser was malingering. So far as his testimony is concerned, however, we cannot overlook the fact that the opinion expressed by him was based on examination of her many months after the accident and did not purport to take into account her condition at the time immediately following the accident or the abdominal condition found in the subsequent operation. These latter elements were manifestly of vital importance to any satisfactorily grounded and adequate medical comprehension of her true condition. They properly could be, and were, taken into account in the opinion expressed by Dr. Hurd. Nor can we overlook the fact that the testimony given by Dr. Deppe was not only directly contradicted by Dr. McFadden in all essential particulars, but that Dr. McFadden gave his opinion, in answer to a hypothetical question which incorporated

the various elements involved in Mrs. Dornblaser's condition at the time of the accident, that nervousness could be caused or aggravated by such an occurrence and that a decrease of the condition would depend upon the progress of her general physical condition. The testimony evidently calculated to establish that if the liver had been torn sufficiently to cause a hemorrhage Mrs. Dornblaser would have collapsed on the spot would be more convincing were it not established that this case did not present a liver normally circumstanced but one which had previously been artificially re-adjusted and secured in place by a stitch. The testimony that the age of adhesions could not be told by inspecting them may be taken to express a correct conclusion and yet be without determining force here, because the evidence shows that Drs. Hurd and Knewitz not only looked at the adhesions but handled them and broke them up, and based their conclusions, in part at least, upon the fact that the disposition which they made of them was easily accomplished.

It is not the province of the court to weigh conflicting evidence and substitute its judgment for that of the Industrial Commission unless the court can say that the finding of the commission is clearly and manifestly against the weight of the evidence. (*Peters Machinery Co.* v. *Industrial Com.* 346 Ill. 403; *Clausen* v. *Industrial Com.* 346 id. 474.) In the case at bar, however, we are constrained to hold that the finding of the commission was clearly and manifestly against the weight of the evidence and that the circuit court was warranted in setting it aside.

The contention is made that the circuit court had no power to enter the judgment which the record discloses. In the cases cited as authority for the contention a money judgment was entered and execution awarded, or the judgment involved other elements not authorized by statute. By section 19 of the Workmen's Compensation act the court is authorized, if it sets aside the decision of the commission and if the facts found in the proceedings before the com-

mission are sufficient, to enter such decision as is justified by law. The judgment was not improper in making a weekly award and stating that the petitioner was entitled to receive the sum already accrued on that basis and in awarding a pension for life after a certain period.

The judgment of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*