(No. 29400.—

OLIN INDUSTRIES, INC., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(LUCINDA RADCLIFF, Defendant in Error.)

*Opinion filed May 21, 1946—Rehearing denied September 12, 1946.*

VERLIE, EASTMAN & SCHLAFLY, and EMERSON BAETZ, both of Alton, for plaintiff in error.

MEYER & MEYER, of East St. Louis, for defendant in error.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The arbitrator allowed Lucinda Radcliff an award for temporary total incapacity caused by an accidental injury received while she was employed by plaintiff in error, Olin Industries, Inc., formerly Western Cartridge Company. After hearing additional evidence the commission sustained the award. On *certiorari*, the circuit court of Madison county sustained the commission.

Lucinda Radcliff was employed by plaintiff in error as an operator of a pocketer machine. She entered the employment in January, 1943, and continued to May 12, 1943, when the injury complained of occurred. At the time of the accident, Lucinda Radcliff was engaged in cleaning the machine which she operated. A metal guard which covered a wheel on the machine had to be raised to gain access to parts of the machine. The guard is described as being four feet long and weighing about seventy-five pounds. It appears to have been on hinges and was equipped with a latch to hold it in an elevated position during the cleaning. She testified that she raised the guard and while she was working on the machine it fell striking her across the right breast. She made immediate complaint to the foreman and he sent her to the company's first-aid office. Dr. Montgomery administered first aid and told her she could go to her home and that if she was not feeling better in the morning to call him. On the following day she communicated with the doctor and he directed her to Dr. McCuistion, who was a company doctor. Dr. McCuistion suggested she could go to the hospital, which she did, remaining there for eleven days. During this time Dr. McCuistion saw her daily. An X-ray was taken, but it did not disclose any fracture of the ribs or sternum. Dr. McCuistion testified that when she entered the hospital, the working diagnosis was contusion of the chest, that when she left it was neurosthenia. She left

the hospital May 24, 1943, and Dr. McCuistion testified he saw her May 29, June 17, 23 and 24. He stated that when he first examined her there were no bruises or ·objective evidence of injury and that the diagnosis of contusion of the chest was based on subjective complaints and history. In his opinion, claimant was in her menopause, which he said would account for her condition. He testified, however, that he believed she was sincere in her complaint and in this connection stated that she might be a traumatic neurotic.

The only point raised on this review is that the evidence fails to show any objective symptoms of injury as required by subparagraph 3 of paragraph (i) of section 8 of the Workmen's Compensation Act. (Ill. Rev. Stat. 1945, chap. 48, par. 145(i) 3.) The statute provides that compensation payments, such as claimed here, shall mean and be defined to be for injuries and only such injuries as are proved by competent evidence, of which there are or have been objective conditions or symptoms proved, not within the physical or mental control of the injured employee himself.

At the opening of the hearing before the arbitrator, the parties stipulated various facts and concluded that the only issues in dispute were as to the amount of additional hospital or medical expenses, if any, and as to whether the alleged injury arose out of and in the course of the employment, its nature and extent and as to whether there was disability at the present time. Claimant testified that following the accident she had severe pain in her right breast which extended from that point around the right side under her arm and to her neck and head. She stated the pain had continued since the accident, that she had been nervous, subject to crying spells, and that her menstrual periods, which had always been regular and normal, had become irregular. She testified she was not able to work, except for minor household duties. She stated that

there were no bruises or marks on her breast where the guard struck her.

Dr. O. J. Culbertson, a general practitioner, testified he examined claimant on August 6, 1943, and by palpation found a tenderness in her right breast which extended laterally around the chest toward the back. His diagnosis was that she had a costal cartilage injury with a soft tissue injury causing an intercostal neuralgia to the chest. He said such injury could have been caused by a trauma that happened on May 12, 1943, and that in his opinion defendant in error was not able to do ordinary factory work. On cross-examination, he admitted his diagnosis of a costal cartilage injury was based on the complaint of defendant in error, and could not be otherwise demonstrated. The X-rays taken by him were negative.

Dr. James F. McFadden, a neurological specialist who treated defendant in error, testified he examined claimant on August 30, 1943, and found her right upper extremity reflexes more active than the left; that she had a tenderness to pressure over the ribs on the entire right chest and back which at times extended to the left; that she had an increase of sensation to pinprick over the right chest and a decreased sensation in the entire right forearm to the elbow. He saw her again October 22, and to the time of the hearing before the arbitrator in January, 1944, he had seen her seven times. He testified she remained the same, and that he treated her, giving her sedative medication to allay the nervousness and decrease the pain. He said she was suffering from a functional nervous condition known as neurosis, which could have been induced by the accident of May 12, 1943, and that in his opinion she was sincere and had pain, and because of the pain was unable to do ordinary factory work. In the opinion of this witness the reaction of claimant to pinpricks and the results of the reflex tests were objective symptoms of pain which were beyond her control. He said the arm reflexes

were taken in the following manner: The biceps reflex was elicited by placing the thumb of his left hand on the tendon of claimant's biceps muscle at the end of her elbow and striking her thumbnail with a reflex hammer; and that there was a contraction of the biceps. The triceps reflex on the back of the arm was taken by holding the arm and striking the tendon of the triceps with a hammer over the tendon. The radial reflex was taken by striking her radial right at the wrist, at the lower end of her radius bone. The increased muscle contractions caused by these tests the witness regarded as objective, and he said that the reflex was more active on the side having pain, and that in his opinion the greater reflex found in claimant's right arm was caused by pain.

Dr. Francis M. Barnes, a neurologist, testified for defendant in error on review before the Industrial Commission. He had treated her and found she had a tenderness all over the right breast area, hypersensitivity to pinprick over the right shoulder from the midline in the back down and under the right breast, and throughout the entire upper right extremity. He found the reflex of the right elbow to be greater than that of the left, and stated that the increased reflex in the right elbow and the sensory disturbances and pain in its response were objective and could not be simulated by claimant. In answer to a long hypothetical question, the witness gave it as his opinion that claimant was suffering from a nervous condition, traumatic in origin, which could have been caused by the accident of May 12, 1943. His working diagnosis was that she had a severe traumatic neurosis, and that he did not think she was able to do ordinary factory work.

Dr. J. R. Montgomery, the physician employed by plaintiff in error who gave first aid, testified that he saw claimant within a few hours after her injury and found no bruise or tear of the skin or other objective evidence of injury.

Dr. Archie D. Carr, a neurologist, testified for the employer on review before the commission and said he examined claimant at the request of the employer on November 16, 1944; that his examination was entirely negative except for sensory changes which extended over her back and as low down as the crest of the ilium on the right, over her right upper arm and anteriorily over the right chest, and down the right arm. The witness testified that in his opinion claimant did not sustain an injury as a result of trauma and that he did not find any nervous injury.

The employer does not raise any question as to the admissibility of the opinions of any of the medical experts who testified for claimant. The position is taken that the claimant's testimony and that of her medical witnesses is founded solely on subjective symptoms. The argument made implies at least that claimant is a malingerer and that the evidence does not show objective symptoms to support a finding that she ever received an injury of any consequence. The undisputed evidence is that prior to the accident claimant enjoyed good health, was not nervous, and that her menstruation was regular and normal. Dr. McCuistion suggested hospitalization to claimant and when she entered the hospital he adopted a working diagnosis that she had contusions of the chest. Undoubtedly such diagnosis was based on what she had told him as to the pain she was suffering and the history of the case, for he testified that there was no evidence of any breaking, bruising or tearing of the skin at the area struck. During the period she was in the hospital, Dr. McCuistion saw her every day. When she left the hospital his diagnosis of her condition was neurasthenia, which he stated was nervous exhaustion. Such diagnosis must have been founded on something more than subjective conditions under claimant's control. The neurotic debility, fatigue, lack of zest or interest, or emotional conflicts accompanying neurasthenia or nervous ex-

haustion would be objective symptoms upon which a diagnosis such as the one made could be founded. It is not denied that the guard fell and struck claimant as she testified. Dr. McCuistion's testimony as to his second diagnosis must be considered as being founded in part at least upon objective symptoms. He was the attending physician at the time he made the last diagnosis and his conclusion might be founded in part upon subjective symptoms, or the history of the case, and in part upon objective symptoms. *Powers Storage Co.* v. *Industrial Com.* 340 Ill. 498.

The next question is as to whether the condition of injury was proved by objective symptoms to have continued after claimant was discharged from the hospital. On this point there is the testimony of Drs. McFadden and Barnes. Dr. McFadden testified that the reflex tests which he gave claimant were objective, that her responses were beyond her control and that the result of the tests was that she was suffering pain in her right side. He stated that her neurosis would last as long as she continued to have pain. He said it was a trauma neurosis and could have been caused by the accident in question. His testimony was supported by that of Dr. Barnes.

On the other hand, there were the medical experts called by the employer, Drs. McCuistion and Carr, whose conclusions were in conflict with those reached by the doctors who testified on behalf of claimant. They gave it as their opinion that the claimant received no injury as the result of any trauma.

It is argued on behalf of the employer that the medical testimony shows that claimant's condition was caused by the change of life she was experiencing. On this the opinions of the medical witnesses are in conflict.

It is clear that the employer's contention, that there is no injury that was proved by objective symptoms, cannot be sustained. The evidence is conflicting, and, after an analysis of the same, we cannot say that the finding of

the Industrial Commission is against the manifest weight of the evidence. It is not the province of this court to weigh conflicting evidence and substitute its judgment for that of the commission unless the court can say that the finding of the commission is clearly and manifestly against the weight of the evidence. *Copas* v. *Industrial Com.* 349 Ill 262; *Peters Machinery Co.* v. *Industrial Com.* 346 Ill. 403; *Clausen* v. *Industrial Com.* 346 Ill. 474.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*